In the Matter of Mary Elizabeth
DUNN, a Minor.

Mary Elizabeth DUNN, Respondent,

v.

James DUNN, Natural Father, Appellant.

No. WD 31960.

Missouri Court of Appeals,
Western District.

July 28, 1981.

Allan D. Seidel, Miller, Humphreys & Seidel, Trenton, for appellant.

Robert B. Paden, Maysville, for respondent Samuel R. Long, juvenile officer, 43rd Judicial Circuit.

Before KENNEDY, P. J., and SHANGLER and WASSERSTROM, JJ.

WASSERSTROM, Judge.

The trial court ordered the parental rights of James Dunn ("Dunn") terminated with respect to his natural daughter Mary Elizabeth Dunn. Dunn appeals. We affirm.

For his first point on appeal Dunn contends that the petition filed by the Juvenile Officer sought to terminate his rights under statutory Section 211.447, subd. 2(2)(b) (all statutory references are to RSMo 1978); that the evidence failed to make a case for termination under that subsection; and that the court erroneously attempted instead to premise the termination of rights upon subsection 2(f). The petition which served as the foundation for this proceeding prayed termination of rights against both Dunn and also the natural mother. The petition as originally prepared proceeded against Dunn under the following allegation: "That the termination of parental rights of the natural father is sought under Section 211.477, 2.(f) [211.447, subd. 2(2)(f)] RSMo. 1978, in that Mr. James Dunn, who is both legally required and financially able, has failed to support said child for a period of six months." For some reason unexplained on this record, the quoted allegation was amended by interlineation by striking out the section number 211.477, (2)(f) and substituting 211.447, (2)(b).

Dunn is correct in saying that the evidence fails to show a basis for termination under subsection 2(b). That subsection provides that parental rights may be terminated if the parent has neglected the child for a period of six months prior to the filing of the petition; but it is further provided that if the child is in the actual custody of others, then "the person or agency having legal or actual custody of the child must show that an appropriate plan approved by the court has not been reasonably complied with by the parent or has been unsuccessful . . . ." In the present case the social worker had set up two appointments for Dunn to see the child. On the first occasion Dunn appeared for the appointment, but he was unable to see the child because the social worker was suddenly compelled to be elsewhere. With respect to the only other appointment, Dunn did not appear for the reason that he could not get off work. This limited opportunity for visitation offered to Dunn hardly complies with the requirement of subsection 2(b) that the parent be afforded "an appropriate plan." The social worker who testified on behalf of the Division of Family Services did not claim to the contrary, her testimony in this respect being as follows:

"Q. Would you be willing to work with Mr. Dunn in a contract for visitation or trying to reestablish contact between him and this minor child?

A. Most certainly if the Court so ordered.

Q. He has not actually been offered such a contract, has he?

A. *No, he has not.*" (Emphasis added).

Notwithstanding the failure of the Juvenile Officer to prove a case for termination under subsection 2(b), he claims that the evidence supported a termination of parental rights and the trial court found that the rights should be terminated under subsection 2(f). That subsection provides that parental rights may be terminated if "The parent, who is both legally required and financially able, has failed to support the child for a period of six months."

Dunn challenges the authority of the trial court to terminate parental rights under subsection 2(f), in view of the fact that the petition pleads only a case for termination under 2(b). This variation between the pleading on the one hand and the evidence and finding on the other, resulted in no misleading of Dunn. In the first place, the pleading itself was in the language of subsection 2(f) even though the wrong subsection number was stated. Moreover, the Juvenile Officer made it clear from the outset that his position made principal reliance on subsection 2(f). In that regard the Juvenile Officer stated: "It will be the juvenile officer's contention from the evidence adduced regarding the contacts by Mr. Dunn with the minor child that he has failed to support or contact the child for a period, the statutory period required, while being legally required to and financially able to offer support of the child . . . ."

The situation here calls for application of the rule that when issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Rule 55.33(b). That general rule is applicable in juvenile proceedings under Rule 110.04, inasmuch as Rule 55.-33(b) is not inconsistent with any rule specifically governing juvenile proceedings. Evidence as to Dunn's failure to support the child was received without objection and was fully tried. The pleading here must therefore be considered as amended to conform to the proof. Dunn's first objection, based on the pleading, is therefore overruled.

■ Dunn's second and final point challenges the court's findings that Dunn was "legally required and financially able" to support the child. With respect to his ability to support, the record shows that Dunn earns $290 per week and has take home pay of $225 per week. Any doubt with respect to his financial ability to support the child is removed by his own admission which was as follows:

"Q. Were you financially able, Mr. Dunn, to make some support payments if you'd been requested to?

A. Right.

Q. Excuse me?

A. Yes."

With respect to whether he was "legally required" to support his child, Dunn makes the argument that the requirement for support does not mature until his responsibility has been reduced to a court order under Section 211.241. No authority has been cited by Dunn for that contention, and it has no merit. Even though the obligation on Dunn was never reduced to a specific dollar and cents figure, nevertheless it existed independent of any court order on the subject. As an illustration of this indisputable fact, he would have been subject to suit by anyone who supplied necessities to or for the benefit of the child during the period when Dunn failed to do so. Dunn by his own admission was aware that some kind of child support was due from him, and he further admitted that he was financially able to make support payments. Despite that, he failed to make any payment of any kind at any time. The evidence fully supported the trial court's finding. Dunn's second point is overruled.

Affirmed.

All concur.