In Interest of D.M.J., Jr.

and

T.H.L.

Crawford County Juvenile Officer, Respondent,

C.L., Appellant.

No. 13400.

Missouri Court of Appeals, Southern District, Division Three.

Dec. 21, 1984.

Paul L. Bell, Steelville, for appellant.

No appearance for respondent.

MAUS, Judge.

The trial court terminated appellant-mother's parental rights in respect to her illegitimate sons, D.M.J. and T.H.L. The reputed father of D.M.J. denied paternity. Nonetheless, he consented to the termination of his parental rights. The reputed father of T.H.L. was deceased. The appellant-mother presents two points of alleged error.

Her first point is that the petition sought termination upon the basis of § 211.447.2(2)(i)b, RSMo Supp.1984, (unrectified conditions) and the court impermissibly terminated her rights upon a finding under § 211.447.2(2)(b) (neglect). Due process demands "[t]he petition in a termination of parental rights case should contain allegations likely to inform those persons involved of the charges, to the end that objection may be prepared." In *Interest of*

*W.F.J.*, 648 S.W.2d 210, 216 (Mo.App.1983). Also see *M.R.H. v. McElroth*, 622 S.W.2d 15 (Mo.App.1981). Four of the statutory bases for termination are discussed and distinguished in In *Interest of W.F.J.*, supra. It may be assumed, without deciding, that the appellant-mother's first point as stated is sound.

However, that point has no basis in fact. The petition has not been drafted with precision. In her statement of facts and argument, the appellant-mother emphasizes a sentence of the petition cast in the language of § 211.447.2(2)(i)b. "Specifically, the mother of said children, [mother], has failed on a continuing basis, to rectify the conditions which formed the basis of the Petition filed herein under the provisions of RSMo 211.031." She then stresses the finding in the judgment of termination that:

> [Mother] has neglected, without good cause, each of the aforesaid children for a period of six months prior to the filing of the Petition and specifically that though each of said children has been in the legal or actual custody of others, she has failed to provide either one of said children with a continuing relationship during said period of time as she has failed to communicate or visit with said children other than on a token basis.

However, the appellant-mother does not afford adequate recognition to the portion of the petition that reads: "[T]he said [mother] has neglected, without good cause, each of the aforesaid children for a period of six months prior to the filing of the original Petition to Terminate." That portion of the petition charges neglect in the language of the statute, § 211.447.-2(2)(b). That is clear notice of her conduct that is alleged to be a basis for termination. That charge and notice was not negated by an additional reference to a failure to rectify. It has been said:

> [T]he *neglect* definition of § 211.447.-2(2)(b): *'failure of a parent to provide, on a continuing basis, the care, guidance and control necessary for the physical, mental, and educational well-*

*being of a child'* [emphasis added] suits the proof required for the termination of the parental right based upon an uncorrected · *condition* of neglect which induced initial jurisdiction over the child under § 211.031 and then becomes the basis for termination of parental right under § 211.447.2(2)(h)b [RSMo 1978].

*D.E.J. v. G.H.B.*, 631 S.W.2d 113, 119 n. 10 (Mo.App.1982). Also see In *Interest of R.L.P.*, 652 S.W.2d 185 (Mo.App.1983). If the petition is construed as alleging as a basis "unrectified conditions" as set forth in § 211.447.2(2)(i)b, and "neglect" as defined in § 211.447.2(2)(b), the proof and finding of neglect is sufficient to sustain the termination. In *Interest of Gowen*, 610 S.W.2d 319 (Mo.App.1980). Any doubt the petition charged neglect is dispelled by the additional allegation the appellant-mother did not comply with numerous approved plans. Only the subsection declaring neglect to be a basis for termination refers to an approved plan. § 211.447.2(2)(b). Compare *In Interest of W.F.J.*, supra. Reasonably construed, the petition alleged neglect as a basis for termination and gave the appellant-mother notice of that charge. See *Matter of Dunn*, 620 S.W.2d 46 (Mo. App.1981).

■ By her second point the appellant-mother attacks the sufficiency of the evidence. A brief statement will provide background for consideration of the evidence on the critical issues. In February, 1980, appellant-mother had been living with a male, D.L.D., for a period of months. D.M.J. was a little over two years old. T.H.L. was less than one year of age. For an unexplained reason, D.L.D. had at times locked D.M.J. in a closet or in the bathroom. In February, 1980, he physically abused D.M.J. to such an extent that the appellant-mother informed the authorities. Nevertheless, after a few days she resumed living with D.L.D. The Juvenile Court then assumed jurisdiction of D.M.J. In April, 1980, because of medical neglect, the Juvenile Court assumed jurisdiction of T.H.L.

By July, 1980, the appellant-mother was living in Cuba, Missouri. That month, D.M.J. was returned to her custody. In August, 1980, T.H.L. was returned. On September 24, 1980, she acknowledged her children were neglected. The following day, upon her consent, the Juvenile Court again assumed jurisdiction of them. With D.L.D., she moved to another community. Her living conditions there were termed unsuitable. In December of 1980, T.H.L. was gravely ill. Nonetheless, the appellant-mother did not keep medical appointments for him. Within a short time, the children were again taken from her custody. They have since resided in foster homes.

The history of the appellant-mother after December, 1980 is sketchy. At one time she lived with a sister. She worked at a motel, but quit that job. In the fall of 1981, she worked at a factory. She was fired because she was late, missed work and reported to work under the influence of alcohol and marijuana. For a period she lived in St. Louis. She then moved to Hermann. There she lived with one D.M. She was living with him at the time of the trial. If she regained custody of the children, it was her intention that she and D.M. and the children would live together. The appellant-mother had received training as a practical nurse. She was scheduled to commence employment at a rest home.

After December, 1980, her visitation of the children was sporadic. There was evidence she lived with and associated with persons who were not law abiding. When she had temporary custody of the children, she often left them with a baby sitter. On one occasion the baby sitter had to get the appellant-mother from a bar.

The appellant-mother first argues there was no proof she had neglected the children for six months before the petition was filed. The petition was filed on February 2, 1983. While the appellant-mother testified that on occasion "she bought stuff" for the children, she never otherwise contributed to their support. She did not visit or write them during the nine months be-

fore the petition was filed. The excuses she offered were nebulous. In December, 1982, at the instance of a social worker, arrangements were made for her to visit the children during the Christmas season. The appellant-mother was 1¼ hours late and there was no visit. After the petition was filed and before the trial, she visited the children three times. However, the trial court could find these visits made after the children had not been in her custody for more than two years were reflexive in nature. There was evidence she failed to provide the children with a continuing relationship, § 211.447.2(2)(b), for longer than six months before the petition was filed. That failure could not be defeated by token efforts. § 211.447.2(2)(b). The trial court did not err in finding clear, cogent and convincing evidence of the charged neglect. Compare In the Interest of R.L.P., supra, and In Interest of Gowen, supra.

 The appellant-mother then correctly argues that under the allegations of the petition, the juvenile officer was required to prove she did not reasonably comply with an appropriate plan as set forth in § 211.447.2(2)(b). In *Interest of W.F.J.*, supra.

After the Juvenile Court first assumed jurisdiction of the children, five such plans were prepared. The later plans were essentially revisions of the first plan. Each plan in some form placed upon appellant-mother an obligation to engage in counseling and establish a stable environment for the children. A representative of the Division of Family Services summarized by testifying that the appellant-mother did not comply with any plan.

The last plan was dated January 19, 1982. That plan called upon appellant-mother to do the following. To enter a program at the Blosser Home (a rehabilitation agency). To visit the children every other week. To eliminate excessive alcohol consumption and pot smoking. To have regular contact with her social worker and keep the social worker informed of any changes in circumstances.

Because there was no evidence of her excessive use of alcohol or of marijuana within six months before the filing of the petition, the appellant-mother argues there was no proof she did not reasonably comply with an approved plan. She was convicted of a driving while intoxicated offense committed in March, 1982. In November, 1982, in the apartment of a friend, she attempted suicide. She told the staff at the Blosser Home she did not desire to participate in the program. Her failure in visitation has been recounted. She did not keep the social worker informed of her whereabouts. The trial court did not err in finding clear, cogent and convincing evidence of appellant-mother's failure to reasonably comply with an appropriate plan. The judgment is affirmed.

PREWITT, C.J., CROW, P.J., and HOGAN and TITUS, JJ., concur.