716 S.W.2d 284 (1986)
In the Interest of P.A.W., a Minor Child, Plaintiff-Respondent,
v.
A.M.W., Defendant-Appellant.
No. 50066.
Missouri Court of Appeals, Eastern District, Division Three.
July 8, 1986.
Motion for Rehearing and/or Transfer Denied September 17, 1986.
Application to Transfer Denied October 14, 1986.
*285 David Shaller, Clayton, for defendant-appellant.
Frank J. Kaveney, Kaveney, Beach, Russell, Bond & Mittleman, St. Louis, for plaintiff-respondent.
Motion for Rehearing and/or Transfer to Supreme Court Denied September 17, 1986.
GARY M. GAERTNER, Judge.
The mother, A.M.W., appeals from the juvenile court's order terminating her parental rights to P.A.W., her four-year old son.[1] The juvenile court assumed jurisdiction under section 211.031 RSMo 1978, and entered the termination order pursuant to section 211.447.2(2)(e) RSMo 1978.
On appeal, the mother argues that the juvenile court erred in: (1) basing its decision to terminate her parental rights on a statutory provision that was not in effect when the termination petition was filed; (2) overruling the mother's motion to dismiss the termination petition for failure to state a claim upon which relief could be granted; (3) overruling the mother's motion to dismiss *286 for failure to conduct an investigation and submit a social study prior to termination; and (4) finding against the weight of the evidence that the child's best interest and welfare required termination of the mother's parental rights. We affirm.
None of the parties disputes the tragic facts giving rise to this action. P.A.W. was born on March 15, 1982. Immediately prior to the child's birth, the mother made several bizarre statements to hospital nurses. She denied the pregnancy, claimed that the child was fathered by the devil, and threatened to cut the child up and feed it to the dogs.
On March 18, 1982, proceedings were initiated in the juvenile court for temporary detention of the child due to the mother's psychiatric illness and erratic behavior. On March 19, 1982, the juvenile court entered a temporary detention order placing the child with the Missouri Division of Family Services (DFS). On March 22, 1982, the juvenile officer filed a neglect petition alleging that the mother had failed to provide the care necessary to the child's well-being. On May 10, 1982, after a hearing, the juvenile court entered an order granting the mother legal and physical custody of the child under the supervision of DFS. The mother resided with her parents at that time.
On May 31, 1982, the mother stabbed the child in the chest with a butcher knife having an eight-inch blade. The child, then three months of age, survived the assault and was thereafter placed in a foster home, where he has remained for the past four years. His foster parents desire to adopt him.
On April 13, 1983, the mother pled guilty to second degree assault and was sentenced to five years imprisonment. On July 6, 1984, the juvenile officer filed a petition to terminate the mother's parental rights. The petition alleged that the stabbing incident warranted termination under section 211.447.2(2)(e) RSMo 1978. That provision authorizes termination if "[t]he parent has committed ... a single incident of life threatening or gravely disabling injury or disfigurement of the child...."
On January 25, 1985, the mother filed a motion to dismiss the petition because it failed to state a claim upon which relief could be granted. In her motion, the mother contended that the petition was fatally defective because the only provision under which termination was sought, section 211.447.2(2)(e) RSMo 1978, was not in effect when the petition was filed on July 6, 1984. That provision had been amended on August 13, 1982, subsequent to the stabbing incident but prior to the filing of the termination petition.
On February 5, 1985, the juvenile court denied the mother's motion to dismiss but ordered the juvenile officer to amend his petition to conform to the amended statute, section 211.447.2(2)(e) RSMo Supp.1982. That provision authorizes termination if "[t]he parent has knowingly committed ... a single incident of life threatening or gravely disabling injury or disfigurement of the child...." (Emphasis added.). The juvenile officer subsequently amended his petition to include an allegation that the mother had knowingly stabbed the child within the meaning of the 1982 statute. The allegations under the 1978 statute also remained in the petition.
On March 29, 1985, the juvenile court held an evidentiary hearing on the termination petition. At that hearing, four psychiatrists testified that the mother is afflicted with paranoid schizophrenia. The psychiatrists all agreed that this condition is chronic and will persist for the remainder of the mother's life. Given this diagnosis, each of the four psychiatrists opined that the mother did not "knowingly" stab her child on May 31, 1982. They explained that the mother's mental disease had prevented her from forming the intention necessary to act knowingly.
On April 2, 1985, the juvenile court issued an order terminating the mother's parental rights. The court based its decision to terminate exclusively upon the 1978 version of section 211.447.2(2)(e). The court specifically found that the juvenile officer's *287 allegations with respect to the 1982 statute had not been proven by clear, cogent and convincing evidence. The mother appeals from the juvenile court's order.
In her first point on appeal, the mother argues that the trial court erred in terminating her parental rights under the 1978 version of section 211.447.2(2)(e), because that provision was not in effect when the juvenile officer filed the termination petition on July 6, 1984. The mother contends that although the 1978 statute was in effect when the mother stabbed the child, the 1982 statute is nevertheless controlling because it was in effect when the termination petition was filed.
Section 211.487 RSMo 1978 provides as follows:
1. Sections 211.442 to 211.492 apply to all proceedings commenced on or after August 13, 1978.
2. In any action to terminate parental rights pending prior to August 13, 1978, the law in effect at the time of the filing of the petition for termination of parental rights shall govern the hearing on such petition and any appeal therefrom.
When the legislature amended the Juvenile Code in 1985, it enacted a similar "savings" clause protecting all actions commenced on or before September 28, 1985, and again applying the law in effect at the time of the filing of the petition. See section 211.487 RSMo Supp.1985. No such provision was made, however, when the Code was amended in 1982. It is nevertheless apparent that the legislature intended the law in effect at the time of the filing of the petition to control the termination proceeding. In the instant case, it is undisputed that the 1982 version of section 211.447.2(2)(e) was in effect when the juvenile officer filed his petition. We thus hold that the juvenile court erred in terminating the mother's parental rights under the 1978 statute.
The only other provision under which the juvenile officer's petition sought termination of the mother's parental rights was the 1982 version of section 211.447.2(2)(e). That provision differs from the 1978 statute only in that it requires the parent's life threatening act have been done "knowingly." In the instant case, the juvenile court specifically found that the juvenile officer's allegations under that provision had not been proven by clear, cogent and convincing evidence. This finding was based upon the testimony of four psychiatrists, each of whom opined that the mother did not act knowingly when she stabbed her child. The absence of proof on this element of the 1982 statute thus precluded termination under that provision.
We have thus determined that the juvenile court could not properly terminate the mother's parental rights under either of the statutory provisions set forth in the juvenile officer's petition. This determination, however, does not necessarily require that we reverse the juvenile court's decision. It is a well established rule that in reviewing the decision in a bench-tried case the primary concern of this court is the correctness of the result and not the route by which it is reached. Walker v. Walker, 631 S.W.2d 68, 71 (Mo.App.1982). The lower court's judgment, therefore, is to be affirmed if it is correct under any reasonable theory supported by the evidence. St. Louis County, Mo. v. Oakville Development Co., Inc., 676 S.W.2d 919, 921 (Mo. App.1984). In the instant case, as explained below, we find that the trial court could properly have terminated the mother's parental rights under section 211.447.2(2)(g) RSMo Supp.1982.[2]
*288 We are not unmindful of the rule that termination of parental rights requires strict and literal compliance with the applicable statutes. In re W.F.J., 648 S.W.2d 210, 214 (Mo.App.1983). Section 211.452(4) RSMo 1978 provides that a petition to terminate parental rights must include "[t]he reason or reasons why termination of the parental rights is sought." Due process demands that the petition contain allegations sufficient to inform interested parties of the charges so that they may have an opportunity to present objections. In re D.M.J., 683 S.W.2d 313, 314 (Mo.App.1984); In re W.F.J., 648 S.W.2d at 214. Rule 55.33(b) provides, however, that if issues not raised by the pleadings are tried by the express or implied consent of the parties, those issues shall be treated in all respects as if they had been raised in the pleadings, and the pleadings shall be deemed automatically amended to conform to the evidence. Pike v. Pike, 609 S.W.2d 397, 400 (Mo. banc 1980).[3]
In In re Dunn, 620 S.W.2d 46 (Mo.App. 1981), the juvenile officer filed a petition to terminate the father's parental rights exclusively under subsection (b) of section 211.447.2(2) RSMo 1978, which authorizes termination if the parent neglects the child. After a hearing, however, the trial court terminated the father's parental rights under subsection (f) of section 211.447.2(2) RSMo 1978, which authorizes termination if the parent fails to support the child. On appeal, the father challenged the trial court's authority to terminate his parental rights under a statutory provision not mentioned in the pleadings. The appellate court found no error on this point. The court noted that evidence regarding the father's failure to support the child had been received without objection, and the issue was fully tried. The court thus concluded, applying Rule 55.33(b), that the pleadings would be considered amended to conform to the proof. 620 S.W.2d at 48.
In the instant case, the petition filed by the juvenile officer relied exclusively upon subsection (e) of section 211.447.2(2). The petition made no mention of subsection (g), nor did it contain any allegations regarding the mother's mental condition. At trial, however, extensive expert medical evidence was received regarding the mother's mental condition, and the juvenile court made specific findings on this issue.[4] We thus find that the issue of whether the mother's parental rights could be terminated under subsection (g) was tried by the implied consent of the parties, and may be considered on this appeal. It remains for us to determine whether the evidence was sufficient to support termination under that subsection.
In reviewing the juvenile court's findings and decision in a termination proceeding, we must sustain the judgment unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. D.G.N. v. S.M., 691 S.W.2d 909, 912 (Mo. banc 1985). In any proceeding to terminate parental rights, however, our primary concern must be the best interest of the child. Juvenile Office of Cape Girardeau County v. M.E.J., 666 S.W.2d 957, 960 (Mo.App.1984). We must liberally construe the provisions of the Juvenile Code in order to achieve its overall purpose, which is to promote the best interest and welfare of the child. See sections 211.011, 211.492 RSMo 1978; Smith v. Harold's Supermarket, Inc., 685 S.W.2d 859, 863 (Mo.App.1984).
Section 211.447.2(2)(g) RSMo Supp. 1982, as set forth in the margin, provides that the juvenile court in a termination *289 proceeding must first find whether termination is in the best interest of the child. In the instant case, the juvenile court specifically found that termination of the mother's parental rights was in the child's best interest. The overwhelming weight of the evidence supports this finding. The child has not seen his mother since she stabbed the child at three months of age. The child has resided in the same foster home for the past four years, and has developed close psychological ties to his foster parents and their other children. The juvenile court's finding that the child's best interest requires termination of the mother's parental rights is thus supported by substantial evidence.
After determining that termination is in the child's best interest, the juvenile court must next find that the parent has a mental condition which meets two requirements. The first requirement is that the parent's mental condition "[r]enders him unable to form an intent or act knowingly." Section 211.447.2(2)(g)(a) RSMo Supp.1982. In the instant case, the juvenile court specifically found that the mother could not have acted knowingly when she stabbed the child. This finding was based upon the testimony of four psychiatrists, each of whom testified that the mother suffers from chronic paranoid schizophrenia. We find that this evidence adequately supports the juvenile court's finding.
The juvenile court must next find that the parent's mental condition is "permanent or that there is no reasonable likelihood that the condition is reversible, and such parent has substantially and repeatedly neglected the child or failed to give the child necessary care and protection." Section 211.447.2(2)(g)(b) RSMo Supp.1982. This requirement has two conjunctive components. As to the first componentpermanency or irreversibilitythe juvenile court specifically found that the mother's condition will persist for the remainder of her life. This finding was based upon the uncontroverted psychiatric testimony indicating that the mother's schizophrenia is chronic. This finding was thus supported by substantial evidence.
The second component contains two disjunctive requirements. The second of these requirementsthat the parent has "failed to give the child necessary care and protection"is satisfied in this case. The evidence indicates that immediately prior to the child's birth the mother not only told hospital nurses that the child was fathered by the devil, but threatened to cut the child up and feed it to the dogs. Three months later, she plunged an eight-inch butcher knife into the child's chest. We find that these actions constitute a failure to provide necessary care and protection. This provision does not require repeated or continuous acts of neglect. In re Baby Girl D., 651 S.W.2d 195, 198 (Mo.App.1983). Even a single attempt to inflict a mortal wound upon the child undoubtedly proves a failure to give necessary care and protection. This final requirement under subsection (g) is thus supported by substantial evidence in the record.
Given that each of the requirements under section 211.447.2(2)(g) is supported by substantial evidence in the record, we hold that the juvenile court properly terminated the mother's parental rights. We now consider the mother's remaining points on appeal.
In her second point on appeal, the mother argues that the juvenile court erred in overruling her motion to dismiss the termination petition for failure to state a claim upon which relief could be granted. The mother contends that because the original petition sought termination exclusively under section 211.447.2(2)(e) RSMo 1978, which was not in effect when the petition was filed, the juvenile court should have granted the motion to dismiss. Instead, the juvenile court denied the mother's motion, but ordered the juvenile officer to amend his petition to conform to the 1982 amendment to section 211.447.2(2)(e).
We find no error on this point. The basic purpose of a termination petition is to state facts which bring the child within the jurisdiction *290 of the juvenile court. In re D.L.D., 701 S.W.2d 152, 158 (Mo.App.1985). The juvenile officer's petition in the instant case was sufficient to accomplish this purpose. Accordingly, this point is denied.
In her third point on appeal, the mother argues that the juvenile court erred in overruling her motion to dismiss this action because the juvenile officer failed to conduct an investigation and submit a social study, as required under section 211.472 RSMo 1978. The mother contends that a set of answers to interrogatories submitted by the juvenile officer was insufficient to satisfy the statutory requirements. We have examined the interrogatories, and find that they comply in all respects with section 211.472 RSMo 1978. This point is denied.
In her final point on appeal, the mother contends that the juvenile court erred in finding that the best interest of the child required termination of the mother's parental rights. The mother contends that this finding was against the weight of the evidence. We have previously determined that this finding was supported by the overwhelming weight of the evidence. Accordingly, this point is denied.
The judgment of the juvenile court is affirmed.
SIMON, J., concurs.
KAROHL, P.J., dissents in separate opinion.
KAROHL, Presiding Judge, dissenting.
The majority opinion in this case holds that the trial court erred in terminating the parental rights of A.M.W. under § 211.447.2(2)(e) RSMo 1978. I fully agree with that view and believe that this case must be reversed and remanded to the juvenile court to continue its supervision. The juvenile court could not properly terminate the mother's parental rights under either of the statutory provisions set forth in the juvenile officer's petition.
The majority opinion, however, adopts the view that on the evidence the juvenile court could have terminated the parental rights of A.M.W. under § 211.447.2(2)(g) RSMo Cum.Supp.1982. This ground was not pleaded. It was never considered in the juvenile court. It was not briefed or argued before this court. There is no indication that the petitioner juvenile officer ever considered or intended to try sub-section (g). In order to reach this result, the majority relies on the proposition that all of the issues under sub-section (g) were tried by express or implied consent; that the requirements of due process were met; and that the evidence supports the requirements of sub-section (g). The record simply and absolutely does not support this proposition. Further, the majority opinion conflicts with In re S.P.W., 707 S.W.2d 814 (Mo.App.1986). Therefore, I dissent.
The only evidence offered at trial by four psychiatrists, all of whom were called by A.M.W., related only to the mental condition of the natural mother at the time of the stabbing of her child. There was no evidence that she suffered from a mental condition which rendered her unable to form an intent or act knowingly at any other time, particularly at the time of the termination hearing, as required by § 211.447.2(2)(g)a. RSMo Cum.Supp.1982. The undisputed evidence proved the contrary and the juvenile court made no such finding.
Before reviewing the evidence in detail the nature of the mother's mental condition and certain events are reviewed. All of the psychiatrists agreed that A.M.W. was afflicted at the time of the birth of her child on March 15, 1982, and on the date she stabbed her child on May 31, 1982, with paranoid schizophrenia; that the condition is chronic and will persist for the remainder of her lifetime; that as a result she did not "knowingly" stab her child.[1] However, all of the psychiatrists testified that the chronic condition of paranoid schizophrenia does not prevent a parent from taking care of children. The termination hearing was *291 held on March 29, 1985 and none of the psychiatrists had examined the natural mother after August 1983. They were not asked and could not have given an opinion on the mother's ability to form intent or act knowingly at the time the petition for termination was filed or at the time of the hearing on the petition. Under these circumstances, there was no evidence to support a finding and the juvenile court made no finding on whether the mental condition rendered A.M.W. unable to form an intent or act knowingly as required by sub-section (g)a. Under these circumstances, it is unnecessary to consider whether the mental condition is coordinated with substantial and repeated neglect for failure to give a child the necessary care and protection required by sub-section (g)b.
Dr. Ann Montgomery saw A.M.W. on March 1, 1982, May 4, 1982 and March 28, 1983. She was asked, "So, despite your previous testimony of how ill this lady was you would not take the position on whether she should have her child?" A. No; because there are plenty of people out there who are psychotic who take care of their kids. Q. Did you view it as an imminent danger should the child be returned to her at that time? A. "I don't think I would have thought that." She was also asked, "Q. Is it your testimony that anyone suffering from paranoid schizophrenia is not aware of their actions and cannot act knowingly? A. Not anyone; no. Q. Is it possible for someone suffering from paranoid schizophrenia to act knowingly? A. Yes." She was asked, "Q. Do you have an opinion todayI know it's not your field of expertisebut you are a mother yourself, aren't you? A. Yes. Q. And psychiatrist. Do you have an opinion today as to whether or not based upon what you saw in the records from the other doctors that you have reviewed as to whether or not today she is competent mentally and emotionally to take care of this child who is now about three years old? A. There are no records that tell you how she's been since 1984 and 1985. The illness waxes and wanes, and I have got no evidence about that waxing and waning. I don't know whether she is on medication. So, I can't give you a conclusion. Q. Was it your testimony earlier that because someone has a paranoid schizophrenia does not necessarily mean that they are not capable of taking care of a child? A. That's true; that's true. I have got patients who are paranoid schizophrenic who take care of their kids." (emphasis ours).
Dr. Bun Tee Co, Jr. examined A.M.W. on August 9, 1983 under a court order and for the purpose of the P.S.I. on the criminal case. He opined that there was no doubt in his mind that at the time of the stabbing the mother was not responsible for her acts by virtue of her mental disease, she did not know what she was doing at the time of the alleged crime and did not intend the consequences. He was asked, "Q. Dr., do you have any opinion as to whether or not the fact that a paranoid schizophrenic, that a person who has paranoid schizophrenic characteristics prevents them from taking care of a child? A. No, it does not prevent them. Q. Do you know of cases where paranoid schizophrenics do go about the business of taking care of a child in a healthy manner? A. Oh, yes; quite a few." He was also asked if he had an opinion as to whether or not today, [at the time of the hearing], he felt A.M.W. was capable of taking care of a child and he answered, "I have not examined her, so I would not be able to let you know." (emphasis ours).
Dr. Ahmad Ardekani examined A.M.W. at Malcolm Bliss Hospital in February and March of 1983. He found her competent, "which means the disease was somehow in state of remission. But we found that she was not responsible for the act because she was psychotic at the time of the act." He testified that violent acts are not a common symptom of schizophrenic paranoid-type. He was asked, "Q. Do you have an opinion at all about [A.M.W.] being able to take care of a child today or has it been too long since you have seen her? A. Too long. I don't have any opinion right now. I don't know what state of mind she is in right now. It was last year,actually, `83, two *292 years ago. Q. Have you seen active schizophrenics, paranoid schizophrenics, who have properly cared for their children? A. Yes, I saw them." In Dr. Ardekani's view if the child were returned to the natural mother she should be under supervision or under treatment and observation, "but it shouldn't prevent her to have a child if she is symptom-free but it should be under supervision and observation." (emphasis ours).
Dr. J. Carlos da Silva testified that he saw the mother on March 16 and March 17, 1982. This was immediately after the birth of the child, before the stabbing and he had not examined her thereafter. He was asked, "Q. Do you know of any patients of your own that are paranoid schizophrenics that are capable of taking care of their children? A. Depends on what state of remission they are, you know. It's possible, yes. If they take their medication, if they are usually cooperative with the treatment, and in some cases, yes, they may be able to ... Q. The mere fact that you have paranoid schizophrenia does not automatically, in your opinion, disqualify you from A. Not automatically. It depends on each individual case." (emphasis ours).
The detailed review of the evidence presented to the juvenile court indicates: (1) the issue of the natural mother's mental condition with regard to her ability to form intent and act knowingly at the time of the hearing to terminate parental rights was not an issue tried by consentit was not tried at all; and (2) if the issue was tried then the only possible finding was that there was no proof that the natural mother could not form an intent and act knowingly. It is significant that the trial court made no finding on this issue. Only the majority opinion makes such finding and that opinion is based only upon the fact that her mental condition was permanent not upon the fact that the mental condition renders the parent unable to form an intent or act knowingly. It is significant that the majority opinion does not, as it must, conclude that the evidence supported a finding on the mental condition of the natural mother at the time of termination. The evidence is consistent, undisputed and contrary to the necessary finding which is ignored in the majority opinion. The conclusion in the majority opinion "that each of the requirements under § 211.447.2(2)(g) is supported by substantial evidence in the record" is simply wrong.
The majority justifies affirming the termination on a ground not pleaded and not tried on the authority of In re Dunn, 620 S.W.2d 46 (Mo.App.1981). In Dunn, the original petition pleaded § 211.477.2(f) RSMo 1978 [failure to support]. That allegation was amended by striking 2(f) and substituting § 211.447.(2)(b) [neglect]. Proof under 2(b) failed but satisfied the ground under 2(f). The court affirmed termination under 2(f). However, the basis of that holding is absent here. In Dunn, "the pleading itself was in the language of sub-section 2(f) even though the wrong sub-section was stated. Moreover, the juvenile officer made it clear from the outset that his position made principal reliance on sub-section 2(f)." Dunn, 620 S.W.2d at 48. The Dunn court found the pleading mix-up "resulted in no misleading of Dunn." Id. This cannot be said in the present case. No one will be more surprised to learn that 2(g) was tried than the juvenile court, the juvenile officer, the natural mother and both counsel. The present issue was argued in Dunn. It was not argued here. On the present facts, due process is an orphan.
The importance of the error in the majority opinion is exaggerated by the mother's third claim of error, the failure of the juvenile officer to conduct an investigation and submit a social study as required under § 211.472 RSMo 1978. The majority opinion contends, on the one hand, that the issue of the natural mother's ability to form intent and act knowingly at the time of the termination proceeding was tried by consent. On the other hand, it contends that answers to interrogatories may substitute for the investigation and social study. However, the answers to interrogatories say nothing at all about the mental condition of the natural mother at the time of *293 termination. If the issue was tried by consent then the absence of the investigation is critical and the purpose of § 211.472 has been totally ignored. Such investigation would have required at least a report on the current condition of the natural mother with regard to her mental disease and with reference to her ability to form intent and act knowingly in her role as a mother.
The opinion of the majority adds a finding of fact which was not made by the juvenile court. The juvenile court did not find that at the time of the termination proceeding the natural mother by reason of paranoid schizophrenia was "unable to form an intent or act knowingly." No such finding is possible under the undisputed evidence of the experts. As a result the interrogatories fall far short of complying in all respects with § 211.472 RSMo 1978.
Finally, the opinion of the majority is in direct conflict with In re S.P.W., 707 S.W.2d 814 (Mo.App.1986). In that case, the court considered termination of parental rights of a mother with a personality disorder which was incurable, although controllable with medication and counseling. The trial court concluded that the mother could not form an intent and act knowingly and terminated parental rights under § 211.447.2(2)(g). The trial court also relied on other grounds. The court analyzed the statutory development of that section by reviewing the comparable provisions under the 1959 statute, the 1973 statute and the 1982 amendment. 707 S.W.2d 821-22. It concluded that the progression of these amendments manifested the legislature's increasing willingness to limit the ability of the juvenile court to terminate parents' rights in their children under 2(2)(g). On the present issue it said,
The statute does not define `unable to form an intent or act knowingly,' but in context the meaning of those words is apparent. The meaning of statutory words can be found in the general purpose of the legislative enactment. Bank of Crestwood v. Gravois Bank, 616 S.W.2d 505, 510 (Mo. banc 1981). A court may find additional clues to the legislature's meaning in identifying the malady the legislature sought to cure. Sermchief v. Gonzales, 660 S.W.2d 683, 688 (Mo. banc 1983). To accomplish the purpose of the legislature to protect the best interests of the children, the words `to form an intent or act knowingly' need only refer to the ability of the parent adequately to nurture, care for and protect the children. A parent's mental condition may be such that he cannot form an intent to commit a crime or cannot knowingly violate the law and yet be such that he can adequately take care of his child. Otherwise, the last requirement of subdivision (g) would be superfluous because, beyond the parent's mental condition, the last finding of the court must be that by his consent the parent has `substantially and repeatedly neglected the child or failed to give the child necessary care and protection.'
707 S.W.2d at 822.
In In re S.P.W. there was no medical or psychiatric testimony about the mother's mental condition. The court concluded that a person's mental condition is a psychiatric question. Such "testimony regarding the specific nature of such an ailment, its disabling potential and its permanency is peculiarly within the realm of medicine, particularly psychiatry, and is not within the competency of laymen, even a psychologist specializing in counselling." 707 S.W.2d 824. The court observed, "[i]n parental termination cases, juvenile courts should insist upon the testimony of such readily available psychiatric and medical experts." It held, "[t]he juvenile officer's failure to adduce the psychiatric evidence concerning this mother's mental condition and its permanency and effect is fatal to the case he may have had under § 211.447.2(2)(g)." 707 S.W.2d 825. In the present case, not only was there no psychiatric testimony to support the conclusion pleaded and reached by the majority all of the psychiatric testimony was contrary to the result reached by the majority. Not only does the majority opinion not require psychiatric testimony to support the proposition that the natural mother was unable to form intent or act *294 knowingly it excuses even the absence of lay testimony on the issue. No one testified that the natural mother cannot form intent and act knowingly.
The majority opinion is result oriented. It fails to recognize that the complainant had the burden to invoke the statute and carry a full burden of proof. In the Interest of W.F.J., 648 S.W.2d 210, 214 (Mo.App. 1983). It fails to recognize that the power of the juvenile court to terminate parental rights is purely statutory, and without such legislation, the power would not exist. Severance of the parent/child relationship by act of law is an exercise of awesome power and demands strict literal compliance with the statutory authority from which the power is derived. The majority opinion terminates the parental rights of a mother and the child's right to its natural parent on an issue that was not pleaded, not tried and not proven.
Immediately after the child was born the juvenile court took jurisdiction and continues to have jurisdiction over the child. The petition for termination of parental rights was not filed for that purpose. Because the child remains subject to the jurisdiction of the juvenile court on previous orders, I would reverse the judgment terminating the natural mother's parental rights. If the majority is correct that § 211.447.2(2)(g) constitutes a ground to terminate this mother's parental rights then the issue may be pleaded and tried. In view of the evidence of all of the psychiatrists it would appear that that would be uneventful but at least the natural mother would have an opportunity to demonstrate her ability to form intent and act knowingly and the juvenile officer an opportunity to prove otherwise.
NOTES
[1] The juvenile court also terminated the natural father's parental rights. The father, who denied paternity and failed to participate in the hearing, has not appealed.
[2] Section 211.447.2(2)(g) RSMo Supp.1982 provides, in pertinent part:

The juvenile court may upon a petition filed by the juvenile officer under this section, terminate the rights of a parent to a child if it finds that such termination is in the best interest of the child and ...
(2) When it appears by clear, cogent and convincing evidence that ...
(g) The parent has a mental condition which:
a. Renders him unable to form an intent or act knowingly; and
b. Is shown by competent evidence to be permanent or that there is no reasonable likelihood that the condition is reversible, and such parent has substantially and repeatedly neglected the child or failed to give the child necessary care and protection....
[3] "[T]he Rules of Civil Procedure control juvenile court proceedings unless provided otherwise by statute." In re R.L.P., 536 S.W.2d 41, 42-43 (Mo.App.1976). See Rule 110.04.
[4] In his order terminating the mother's parental rights, the juvenile court judge found as follows: "The uncontroverted evidence is that [the mother] has been diagnosed as a schizophrenic, paranoid type, which is a chronic condition which will endure for the rest of her life. As a result of this diagnosis, [the mother] will continue to be a threat to the safety of the child."
[1] It would be difficult to harmonize this evidence with the sentence on the criminal charge.