**In the Interest of W.A.H., JR., a child.**

**No. 51252.**

Missouri Court of Appeals,
Eastern District,
Division Four.

March 3, 1987.

Nancy Lee Sido, Clayton, for respondent.

Margaret W. Fox, Clayton, for appellant.

SIMON, Judge.

An appeal by G.J.W. from an order, of the Juvenile Court of the County of St. Louis, terminating the parental rights of G.J.W. and W.A.H., Sr. as to their natural son, W.A.H., Jr. W.A.H., Sr. has not appealed.

On appeal, G.J.W. raises two points. First, she contends that the trial court erred in terminating her parental rights based on the finding that she neglected W.A.H., Jr. by failing to reasonably comply with the service plan of June 6, 1983. She argues: (1) that the service plan was invalid because she had not been notified that she had ten days in which to request a hearing on the plan; (2) that the evidence was not clear, cogent, and convincing that her alleged neglect was a sufficient reason

to terminate her parental rights when her conduct is viewed as a whole; and (3) that her lack of contact with W.A.H., Jr. arose from her mistaken belief that she did not have a social worker or service plan to facilitate contact with her son. In her second point, G.J.W. contends that the trial court erred in terminating her parental rights based on her failure to rectify the conditions that had caused the court to assume jurisdiction in the first instance because the evidence failed to establish what the original conditions were, and consequently, what conditions G.J.W. failed to rectify.

The record discloses that W.A.H., Jr. was born on May 5, 1976 to G.J.W. who was unmarried at the time, and that W.A.H., Sr. is the named father. G.J.W. has three other children, M.W., L.S., and A.H. On December 18, 1978, when he was approximately two and one half years old, W.A.H., Jr., M.W. and L.S. were removed from G.J.W.'s home and their actual custody was transferred to Missouri Division of Family Services (DFS). W.A.H., Jr. was entrusted to the foster care of Mrs. Anne Tyler and has been continuously in her care.

The Juvenile Court assumed jurisdiction of W.A.H., Jr. on April 5, 1979 pursuant to a petition which alleged that his parents or the persons legally responsible for his care and support neglected or refused to provide proper support and other care necessary for his well-being, and that the child was without proper care and supervision. On April 5, 1979, pursuant to an order of the juvenile court, W.A.H., Jr.'s legal and physical custody were continued in the foster care system of DFS.

A petition seeking the termination of G.J.W.'s parental rights as to W.A.H., Jr. was filed on July 6, 1984 and amended on April 26, 1985. The petition, as amended, alleged three grounds for termination of her parental rights: (1) abandonment of the child for a period of six months or longer, without any provision for support and without any communication or visitation; (2) neglect of the child for a period of six months or longer and failure to reasonably comply with the 1983 service plan approved by the court; and (3) failure to rectify the conditions alleged in the April 5, 1979 petition which had originally brought the child within the jurisdiction of the court.

On January 24, 1986, the Juvenile Court terminated the parental rights of G.J.W. and W.A.H., Sr. The trial court found that the father had abandoned W.A.H., Jr. under § 211.447.2(2)(a)b (RSMo Supp.1982) (All further reference shall be to RSMo Supp.1982 unless otherwise noted).

As to G.J.W., the trial court found that G.J.W. had abandoned W.A.H., Jr., neglected him by failing to reasonably comply with the 1983 service plan, and failed to rectify the conditions which formed the basis for the court's original jurisdiction of W.A.H., Jr. Specifically, the trial court found that G.J.W., without good cause, left W.A.H., Jr. without any communication or visitation from June 1983 until August 24, 1984; that G.J.W. was notified of the June 6, 1983 court approved service plan and was notified that she had ten days within which to request a hearing on said plan; that G.J.W. was fully aware that her parental rights could be terminated in the event that she failed to comply with the service plan; that G.J.W. had, in fact, failed to comply with the provisions of the service plan and, as a result, neglected W.A.H., Jr. by failing to provide him with a continuing relationship; and that G.J.W. had failed on a continuous basis to rectify the conditions alleged in the April 5, 1979 petition which had formed the basis of the court's original jurisdiction. The trial court further found that the termination of G.J.W.'s parental rights was in the best interest of W.A.H., Jr.

The following evidence was adduced at the termination hearing. Tyree Miller, a DFS social service worker, was assigned W.A.H., Jr.'s case in January, 1979. Miller remained the sole worker assigned to the case until he left the agency in September, 1984. During that time, Miller monitored W.A.H., Jr.'s progress in foster care, maintained contact with G.J.W. and arranged visits for W.A.H., Jr. and G.J.W. Miller was also responsible for helping G.J.W. fulfill her obligations under a court ap-

proved service plan prepared to help her regain custody of W.A.H., Jr.

Miller testified that W.A.H., Jr. had been removed from G.J.W.'s custody on December 18, 1978 because of allegations of lack of supervision and physical and emotional neglect. These were the allegations that formed the basis of the original petition and caused the juvenile court to originally assume jurisdiction. Miller testified that, while he was assigned to the case, G.J.W. failed to rectify the conditions which had originally resulted in the court assuming jurisdiction over W.A.H., Jr. Specifically, Miller stated that G.J.W. had failed to seek treatment for alcoholism which, in his opinion, was at the root of all her problems. Miller stated that G.J.W. refused to admit having a problem with alcohol. G.J.W.'s children had told Miller that when she drank she became abusive and was a different person. On cross-examination Miller stated that he did not know if G.J.W. still had a problem with alcohol after he left the case or at the time of trial.

Miller testified that he prepared a service plan pertaining to W.A.H., Jr. and two other children of G.J.W. He signed the plan on September 23, 1980, and presented it to G.J.W. who signed it in his presence. Miller explained the plan item by item before G.J.W. signed it and told her that the purpose of the plan was to help her regain custody of her children. He told her that if she did not fulfill her obligations, a hearing might be held, her parental rights might be terminated, and she might never be able to regain custody of her children. G.J.W. testified that she recalled Miller reviewing each specific item of the plan with her, explaining it to her and telling her that she would need to comply with the provisions in order to regain custody of her children. G.J.W. testified that she understood everything except why she needed to seek counseling for alcoholism. G.J.W. stated that she was never informed that she might never regain custody of her children if she failed to comply with the plan, even though the plan contained such a warning. The plan also contained the following: "I have read this plan and understand what it means. I understand that I have ten (10) days to ask, in writing, for a hearing if I disagree with this plan." This was directly above the line upon which G.J.W. signed.

This service plan remained in effect until June of 1983. Under the plan G.J.W. was to: (1) visit W.A.H., Jr. at least once a month; (2) receive a psychological evaluation and recommended treatment; (3) authorize Miller to receive information about her treatment; (4) maintain adequate housing; (5) attend parenting classes regularly; and (6) meet with Miller at least once a month.

Miller testified that while the plan was in effect, G.J.W. had visitation with W.A.H., Jr. with the exception of seven or eight times. Miller testified that G.J.W. received the psychological evaluation, but failed to follow through with the recommended treatment, i.e., counseling for an alcoholic condition and inadequate personality. Miller testified that G.J.W. had failed to maintain adequate housing under the plan. Miller reached this conclusion because G.J.W. moved two or three times a year, lived in a boarding house for an extended period, and the residences were not large enough and did not have adequate bedding.

Miller prepared another service plan for G.J.W. in 1982, which he filed with the court, but which was never approved. The 1982 plan was ultimately revised and then submitted and approved by the court in June, 1983. Miller testified that on June 15, 1983, he went to G.J.W.'s home and showed her the new plan. She told him that she was not going to sign the plan and asked him to leave her home. He stated that he attempted to explain her obligations thereunder, but that he probably did not review them with her because of her hostility. Miller testified that subsequent letters mailed to G.J.W. explained her obligation and that he had told her personally that the plan became effective whether or not she signed it. Miller believed that he had left a copy of the new plan with G.J.W.

G.J.W. testified that she remembered Miller coming to her home and presenting the new plan. She stated that she looked

at and "read" the plan. She stated that she returned the plan, told Miller that she would not talk to him anymore, and requested a new social service worker. She testified that the new plan was the same as the first and that she was tired of being "taken around in circles." The new plan contained the same notice as the 1980 plan; that G.J.W. had ten days to ask, in writing, for a hearing if she disagreed with the plan.

Under the new plan G.J.W. was required to maintain her monthly visits with W.A.H., Jr. She was obligated to maintain sobriety and participate in an in-patient alcohol treatment program if requested to do so by DFS. She also was required to participate in all sessions of individual and family counseling with Dr. Donald Cross and allow DFS to obtain pertinent information about her counseling and alcohol treatment.

It is undisputed that G.J.W. did not visit or communicate with W.A.H., Jr. from June 1983 until August 24, 1984. Miller testified that from January 6, 1984 until July 6, 1984, G.J.W. neither requested nor had visits with W.A.H., Jr., although Miller encouraged her to do so at least once a month by phone or letter. Miller testified further that G.J.W. sent no money, gifts, or cards to W.A.H., Jr. from January 6, 1984 to July 6, 1984. Further, there is no evidence that G.J.W., or anyone on her behalf, ever attempted to contact or communicate with W.A.H., Jr. during this period.

G.J.W. testified that she did not visit with or attempt to communicate with W.A.H., Jr. during this period because she was working extremely long hours and did not have time. She testified that she was trying to save enough money to enable her to acquire a "bigger place where he could come." She testified she felt she had no social worker because she was not talking to Mr. Miller and because she had requested from Ms. Puller, Mr. Miller's supervisor, that another social service worker be assigned to her case. G.J.W. stated that Ms. Puller told her that it would take from four to seven months before a new worker could

be assigned. G.J.W. testified further that during this time "I was still following Mr. Miller's plan."

■ At the outset, we note that the Juvenile Court's termination of G.J.W.'s parental rights shall be sustained unless "there is no substantial evidence to support it, unless it is contrary to the weight of the evidence, or unless it erroneously declares or applies the law." *D.G.N. v. S.M.*, 691 S.W.2d 909, 912 (Mo. banc 1985). Furthermore, under § 211.447, the controlling statute here, *see In the Interest of P.A.W.*, 716 S.W.2d 284, 287 (Mo. App.1986), parental rights may be terminated involuntarily when it appears that the termination would be in the best interest of the child and it appears by clear, cogent, and convincing evidence that one or more of the statutory conditions contained in § 211.447 is met. *Juvenile Office of Cape Girardeau County v. M.E.J.*, 666 S.W.2d 957 (Mo.App.1984). This court will review both the law and the evidence, and will defer to the trial court questions of credibility of a witness and choosing between conflicting evidence. *In Interest of R.E.M.*, 712 S.W.2d 398, 402 (Mo.App.1986).

Section 211.447 provides in pertinent part:

2. The juvenile court may, upon a petition filed by a juvenile officer under this section, terminate the rights of a parent if it finds that such termination is in the best interest of the child and one or more of the following conditions are found to exist:

.    .    .    .    .

(2) When it appears by clear, cogent and convincing evidence that . . .

(a) The parent has abandoned the child. The court may find that the parent has abandoned the child if, for a period of six months or longer . . .;

.    .    .    .    .

b. The parent has, without good cause, left the child without any provision for support and without communication or visitation from the parent.

Evidence that the parent has acted to support, to communicate with or to visit the child during the period may be disregarded if such acts of the parent appear to have been merely a token effort;

. . . . .

(b) The parent has neglected, without good cause, the child for a period of six months prior to the filing of the petition. The term "neglected" as used here in the failure of a parent to provide, on a continuing basis, the care, guidance and control necessary for the physical, mental, and educational well-being of a child: or the failure to provide a child who is in the legal or actual custody of others with a continuing relationship, such as, but not limited to, communication or visitation, and, to the extent the parent is financially able, the failure to provide for the child's care. In those circumstances where the child is not in the legal or actual custody of the parent, the person or agency having legal or actual custody of the child must show that an appropriate plan approved by the court has not been reasonably complied with by the parent or has been unsuccessful, and that the parents were notified of the court approved plan and had at least ten days in which to request a hearing on such plan. Token efforts by the parent shall not be sufficient to defeat a finding of neglect;

. . . . .

(i) The child has come under the jurisdiction of the juvenile court pursuant to the provisions of subdivision (1), paragraph (a), (b) or (c) of section 211.-031, and pursuant to an order of the court under section 211.181, and thereafter;

. . . . .

b. The custody of the child has not been with his parents for six months or longer, or the child has been under the jurisdiction of the court for one year or longer, immediately prior to the filing of the petition to terminate, and the parent has failed, on a continuing basis, to rectify the conditions which formed the basis of the petition filed under section 211.031, and the order entered under section 211.181, and there is reasonable cause to believe that the parent will not, even if given more time, rectify those conditions on a continuing basis, and that the juvenile officer, division of family services or other agency has used reasonable, diligent and continuing efforts to aid the parent to rectify the conditions, and provide on a continuing basis a proper home for the child.

■ Clearly, all the allegations contained within the amended petition for termination are within the statutory grounds, i.e., abandonment, neglect, and failure to rectify conditions causing the court to assume jurisdiction in the first instance. If any one of the allegations is supported by clear, cogent, and convincing evidence, the judgment of the juvenile court must be sustained. *In the Interest of P.A.W.*, 716 S.W.2d at 287.

■ We conclude that the juvenile court properly terminated G.J.W.'s parental rights based on its finding of neglect. There was clear, cogent, and convincing evidence that G.J.W. failed to provide W.A.H., Jr. with a continuing relationship from January 6, 1984 through July 6, 1984. G.J.W. made no attempt to visit or communicate with W.A.H., Jr. She made no attempt whatsoever to contact W.A.H., Jr. by mail, telephone, in person, or through others, even though urged to do so by Mr. Miller. She made no attempt to provide support or even small gifts of affection.

G.J.W. seeks to excuse her conduct on three grounds. First, she argues that she did not receive notice that she had ten days within which to request a hearing on the June, 1983 plan that she found disagreeable. It is true that § 211.447.2(2)(b) invests DFS "with an affirmative duty to submit a

plan for court approval and to provide notice to the parents and an opportunity for a hearing." *In the Interest of W.F.J.*, 648 S.W.2d 210, 215 (Mo.App.1983). We are mindful of the rule that requires strict and literal compliance with applicable statutes in proceedings to terminate parental rights. *In re W.F.J.*, 648 S.W.2d 210, 214 (Mo.App. 1983). We believe that the statutory mandate was followed.

■ The testimony of Mr. Miller and the 1983 plan itself shows that it was approved by the juvenile court. On June 15, 1983 Miller presented the plan to G.J.W. She stated that she looked at and "read" the plan. Miller told G.J.W. that the court approved plan became effective whether or not she signed it. G.J.W., however, refused to accept the plan because, according to her, it was the same as the 1980 plan and she was tired of being "taken in circles." Miller attempted to review the plan with G.J.W. item by item but was unable to do so because of her hostility.

Clearly, G.J.W. received notice that the court had approved a new plan that she would be required to follow. We believe that she also received adequate notice that she had ten days within which to request a hearing on the plan. G.J.W. testified that she "read" the plan. The plan contained the following: "I have read this plan and I understand what it means. I understand that I have ten (10) days to ask, in writing, for a hearing if I disagree with this plan." Furthermore, G.J.W. testified that the 1983 plan was the same as the 1980 plan that she had signed. The 1980 plan contained the identical notice for hearing. Mr. Miller put forth a good faith effort to review the plan with G.J.W. She, however, would not have it and requested Miller to leave. We conclude that the evidence is clear and convincing that G.J.W. was given the required notice.

■ Next, G.J.W. maintains that the evidence was not clear, cogent, and convincing that she neglected W.A.H., Jr. She argues that her actions subsequent to the six month statutory period must be considered and that by the time of trial she had repented of her neglect. Section 211.447.-2(2)(b) provides that the juvenile court *may* terminate the right of a parent to a child, in actual or legal custody of another, based on a finding of neglect, if the parent fails to provide the child with a continuing relationship for a period of six months prior to the filing of the petition for termination, and a court approved service plan, of which the parent has notice, has not been complied with. As is apparent, the court is not required to terminate parental rights based on a finding of neglect, but rather it has the authority to take such action in the exercise of its discretion. Here, the trial court acted well within its discretion. As recounted earlier, the evidence is undisputed that G.J.W. had no contact or communication with W.A.H., Jr. from January 6, 1984 through July 6, 1984. Further, there was clear, cogent, and convincing evidence that G.J.W. received notice of the June, 1983 plan, but refused to comply.

■ Ms. Alma Allen, the DFS social service worker assigned to W.A.H., Jr.'s case after Mr. Miller resigned, testified that from July, 1983 to April, 1985 G.J.W. only had three visits with W.A.H., Jr., in violation with the provision in the service plan requiring monthly visits. Ms. Allen also testified that the weekend prior to trial she had detected alcohol on G.J.W.'s breath and that G.J.W. was unsteady on her feet and was incoherent in violation of the provision requiring G.J.W. to maintain sobriety.

Notwithstanding, G.J.W. argues that she repented from her neglect. There is evidence indicating that in the four months prior to the termination hearing G.J.W.'s visits with W.A.H., Jr. had become more frequent. Ms. Anne Tyler testified that G.J.W.'s visits had increased to approximately twice monthly and that she had witnessed an open display of affection between mother and son. This evidence was for the trial court to weigh in the exercise of its discretion pursuant to § 211.447.-2(2)(b). We find no abuse of discretion.

Finally, G.J.W. seeks to excuse her neglect of W.A.H., Jr. on her mistaken belief that she did not have a social worker or service plan to facilitate contact with her son. In support of her position G.J.W. cites *In the Interest of C.S.*, 483 S.W.2d 790 (Mo.App.1972). The case is inapposite. There, the mother did not understand she could visit her child. DFS had failed to show that the mother was fully aware of her right and obligation to see her child, or that her failure to maintain contact with the child could result in termination of her parental rights. Furthermore, the mother requested to see her child during the statutory period, but she was told that she could not see him. Here, the trial court found that G.J.W. was fully aware that her parental rights could be terminated in the event that she failed to comply with the June, 1983 service plan. This finding was supported by substantial evidence. G.J.W. testified that she read the plan. The plan contained such a warning, a warning identical to the 1980 service plan that she signed and which, according to her testimony, was reviewed with and explained to her by Mr. Miller. Additionally, unlike the mother in *C.S.*, G.J.W. never made any attempt to contact her child, even though repeatedly requested to do so by Mr. Miller. Thus, we conclude that G.J.W.'s neglect cannot be excused on this ground.

Based on the foregoing we conclude that the juvenile court's order must be affirmed. It rests on substantial evidence of neglect, is supported by the weight of the evidence, and correctly declares and applies the law. Moreover, G.J.W. has only challenged the trial court's action in finding neglect and the failure to rectify conditions causing the court to assume jurisdiction in the first instance. G.J.W. has not challenged the trial court's finding that W.A.H., Jr. had been abandoned under § 211.447.2(2)(a)b.

Because we affirm the termination of G.J.W.'s parental right based on the trial court's finding of neglect, it is unnecessary for us to pass upon the correctness vel non of the other findings, as the existence of one of the statutory grounds for termi-

nation is sufficient. *In the Interest of H.J.P.*, 669 S.W.2d 264, 273 (Mo.App.1984).

Judgment affirmed.

GARY M. GAERTNER, P.J., and STEPHAN, J., concur.