In re C.M.E., J.E.E., A.D.B., M.E.S., III.

No. 14768. .

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 26, 1987.

Motion for Rehearing and Transfer Denied and Overruled Feb. 17, 1987.

Terry Daley Schwartze, Rolla, for appellant.

John D. Wiggins, Rolla, Joseph W. Rigler, Joplin, Ronald D. White, Rolla, for respondent.

MAUS, Judge.

By its judgment, the trial court terminated the parental rights of L.E. as legal father, and M.S. and L.H. as reported fathers to C.M.E., a male born October 30, 1972. It terminated the parental rights of L.E. as legal father and H.B. as reported father to J.E.E., a male born March 24, 1974. It terminated the rights of H.B. as legal and reported father of A.D.B., a male born December 8, 1975. It also terminated the parental rights of M.E.S., II as legal and reported father of M.E.S., III, a male born October 3, 1977. Finally, that judgment terminated the parental rights of L.S. as mother of all four of those minor children. § 211.477. Only the mother appeals.

The petition alleged the parental rights of the mother should be terminated upon three of the grounds for termination set forth in § 211.447 before its amendment by L.1985, H.B. Nos. 366, 248, 372 & 393 A. The amendatory act expressly provides that in any action for termination of parental rights pending prior to September 28, 1985, the law in effect at the time of the filing of the petition shall govern. § 211.-487.2. The petition in this case was filed on September 4, 1985. The parties have submitted the case to be decided under § 211.-447 prior to the aforesaid amendment. It will be so considered.

As bases for the termination of the parental rights of the mother the petition alleged the following: neglect as set forth in § 211.447.2(2)(b); failure to support as set forth in § 211.447.2(2)(f); and failure to rectify the conditions which formed the basis for the petition and order by which the juvenile court originally assumed jurisdiction of the children as set forth in § 211.-447.2(2)(i). The trial court found each of these bases to be established by clear, cogent and convincing evidence.

By her first point, the mother contends the evidence is insufficient to establish any basis for termination. It is not necessary to determine if the evidence is sufficient to establish all of the alleged bases for termination. The judgment of termination will be upheld if the evidence is sufficient to establish any one of the alleged bases. *In Interest of JIW*, 695 S.W.2d 513 (Mo.App. 1985); *In Interest of D.M.J.*, 683 S.W.2d 313 (Mo.App.1984).

The evidence centered upon the allegation that the mother, contrary to § 211.-447.2(2)(i), failed to rectify the conditions which formed the basis for the petition and order by which the juvenile court originally

assumed jurisdiction of the children. To support her point in respect to this basis the mother first argues the juvenile court assumed jurisdiction of the children because she stated she could not care for them and the family was being evicted from a dirty home. She then argues the trial court's finding in respect to this basis is unsupported because there was no evidence those conditions have not been rectified.

The mother's argument demonstrates she does not consider all of the evidence and misconceives the nature of the relevant unrectified condition. Evidence concerning that condition included the following. In 1980, the mother and M.E.S., II, lived in Kansas. They were arrested for abuse of the children. Under some type of a counseling program, they were released. The children were placed with the maternal grandmother for a period of time. In 1982 or 1983, the mother and M.E.S., II, lived in New Mexico. While in New Mexico, M.E.S., II, was arrested for sexual abuse of two of the children. The mother returned to Missouri. Following her return, in July, 1983, she told the juvenile officer she could not care for the children. They have been in foster care since that time.

The evidence and the petition of the juvenile officer established the juvenile court assumed jurisdiction of these children because of the condition of the inability of the mother to provide a stable home for them. Or as stated, "[t]he *condition* for that exercise of *juvenile court jurisdiction*, as we note, was the neglect of the mother [and other parent] to provide for the care, custody and support of the children." *D.E.J. v. G.H.B.*, 631 S.W.2d 113, 119 (Mo.App.1982) (emphasis in original). Cf. *In Interest of D.M.J.*, supra, and *In Interest of D___ V___ V___*, 677 S.W.2d 396 (Mo.App.1984).

Following the removal of the children, the mother resumed living for an extended period of time with M.E.S., II, who had returned to Missouri. For seven months she worked at a dormitory cafeteria in Rolla. She terminated her employment for a reason that is not clear from the record. She then worked at a nursing home in St. James. She quit because her "ride" quit and she supposedly "hurt her back." There was evidence that at one time she had an automobile. Nonetheless, after the children were removed from her custody, the mother made no financial contribution to the support of the children.

She entered into 11 different service plans with the Division of Family Services. She performed none. The Division of Family Services provided her with psychological counseling. She participated for a time, but then withdrew because she determined and declared she had no problems. The mother declined to receive occupational training.

In March, 1985, the Division of Family Services advised the mother that if she did not, by July, 1985, provide a home for the children, a petition to terminate her parental rights would be filed. She responded by moving to Dixon with one R.B., a man with whom she had been living. They later moved to Lenox. In July, 1985, they moved to Licking. She was thereafter divorced from M.E.S., II. After the mother moved to Licking with R.B., R.B. was arrested for driving while intoxicated. Thereafter, one Pam, who drew some form of Social Security payments, lived with the mother. Pam was arrested for stealing. The employer of former husband, M.E.S., II, testified that during January, 1986, he picked up M.E.S., II, for work several mornings at the home of the mother. Thereafter, the mother moved to a small mobile home near Licking. She lived there at the time of the hearing. At that time she was employed ten hours per week as a motel maid.

As noted, the mother contends this evidence is insufficient because there was no evidence the small mobile home was dirty; and she said she could care for the children. She also tendered excuses for her many moves, for living with R.B. to whom she was not married, and for her failure to maintain regular employment. Despite the evidence to the contrary, she denied she had resumed living with M.E.S., II, while she was in Licking.

It is within the "prerogative of the trial court to determine the credibility of the witness and accept or reject testimony." *In Interest of JIW*, supra, at 516. A corollary rule that seems particularly applicable to termination cases has been stated as follows. "On appeal of a court-tried case, the appellate court defers to the trial court on factual issues because it is in a better position not only to judge the credibility of witnesses and the persons directly, but also their sincerity and character and other trial intangibles which may not be completely revealed by the record." *In re Adoption of W.B.L.*, 681 S.W.2d 452, 455 (Mo. banc 1984).

■ When the evidence is so viewed, "[t]he conduct of appellant with unmistakable clarity demonstrates her unrectified neglect of her children." *In Interest of D.R.W.*, 663 S.W.2d 426, 429 (Mo.App. 1983). The conduct of appellant mother was much like the conduct of the parent in *In Interest of J___ Y___*, 637 S.W.2d 670 (Mo. banc 1982), in which it was said, "[t]he foregoing provided clear, cogent and convincing evidence in support of the trial court's determination that the parents were incapable of rectifying these conditions and that it would be in the best interest of the children to terminate parental rights under § 211.442." *Id.* at 673. The circumstances are also much like those in *D.E.J. v. G.H.B.*, 631 S.W.2d at 120, in which the court observed the following. "G herself acknowledged that the restoration of the children depended upon a stable home. Yet, despite the persistent and almost indulgent aids of the social agencies, she made no serious effort to accomplish that end." The conclusions expressed in the quotations cited are dispositive of this case. There was sufficient evidence to support a judgment of termination based upon § 211.447.2(2)(i). Cf. *In Interest of R.E.M.*, 712 S.W.2d 398 (Mo.App.1986); *D.E.J. v. G.H.B.*, supra; *In Interest of D.R.W.*, supra.

By her second point, the mother refers to the testimony of a psychologist who counseled with her. He testified that the appellant had made no significant steps to improve her emotional and behavioral functioning to where she acquired sufficient skills or parent/child training techniques so that she could be a competent parent for the children. She contends that evidence is not sufficient to establish a basis for termination under § 211.447.2(2)(a). She apparently refers to that section as amended by the Laws of 1985, as aforesaid. The sufficiency of the evidence to establish that basis is immaterial. Only one basis for termination need be established. *In Interest of JIW*, supra. The opinion of the psychologist constitutes additional evidence to support the termination based upon § 211.447.2(2)(i). The second point is denied.

■ The mother's third point is that the trial court erred in overruling her motion to disqualify the guardian ad litem for the children. That motion recited the fact the guardian ad litem was prosecuting attorney of Maries County and relied upon *In Re F___ C___*, 484 S.W.2d 21 (Mo.App.1972). That case holds that the simultaneous exercise of the offices of prosecuting attorney and juvenile officer by the same person was repugnant to the juvenile code. That case is inapposite.

■ The petition in this case was filed by the juvenile officer of Phelps County. As noted, the guardian ad litem is prosecuting attorney of Maries County. That position does not bar him from civil practice. § 56.360.

The mother's point also states the conclusion that the guardian ad litem failed to take all necessary steps to promote the interests of the children. In argument, without suggesting what additional evidence could have been elicited, she criticizes the guardian ad litem's limited participation in the examination of witnesses and presentation of evidence. The record does not support her conclusion or criticism. The record demonstrates the guardian ad litem in exemplary fashion performed his duties in the trial court. Through the expenditure of substantial time and effort the guardian reviewed all of the extensive records. He met and interviewed each of the children. He interviewed a doctor treating one of the children. At trial, by

agreement of the juvenile officer and the mother, the guardian ad litem presented in narrative form the results of his investigation and interviews. That narration established his concern for the children and demonstrates that he acted in their best interests. The mother's third point is denied and the judgment is affirmed.

PREWITT, P.J., and FLANIGAN, J., concur.

HOGAN, J., not participating.