Mary K. SLAUGHTER (Plaintiff),
Appellant,

v.

Enos B. SLAUGHTER (Defendant),
Respondent.

No. 29955.

St. Louis Court of Appeals.

Missouri.

May 6, 1958.

Tom R. R. Ely, St. Louis, for appellant.

Kerth, Thies & Schreiber, A. H. Kerth, Clayton, for respondent.

ANDERSON, Judge.

This is an appeal by plaintiff, Mary K. Slaughter, from a judgment of the circuit court rendered on motions to modify a decree of divorce.

Plaintiff obtained a decree of divorce from defendant in the Circuit Court of St. Louis County on November 30, 1951. By said decree plaintiff was granted the general custody of the two minor children of the parties, Rex Stephen Slaughter and Patricia Mary Slaughter. At the time of the hearing below, May 24, 1957, Rex and Patricia were thirteen and nine years old respectively. Rex was a child of plaintiff by a former marriage. The natural father of Rex was killed in the Second World War. Defendant, after his marriage to plaintiff legally adopted Rex. The decree granted visitation rights to defendant. Since these rights are not in question on this appeal, it will not be necessary to detail them. By said divorce decree, plaintiff was allowed the sum of $150 per month for the support and maintenance of each child. Thereafter, on December 30, 1953, the decree was, on defendant's motion, modified by reducing the allowance for Rex from $150 per month to $75 per month. Said allowance stood at that figure until it was modified in this proceeding by a reduction of the allowance for Rex to $50 per month. The allowance of $150 per month for the support of Patricia was not disturbed.

On this appeal, appellant complains that the court erred: (1) in reducing the maintenance payments for Rex from $75 to $50 per month; (2) in failing to modify the decree by increasing the amount of the award for Rex; and (3) in failing to modify the decree by requiring defendant to post security for the payment of the maintenance award.

Defendant is a professional baseball player employed by the ball club of the New York Yankees. In a deposition taken May 24, 1957, he testified that he was forty-one years old and was still under contract with the New York Yankees for the then current season. His salary for the 1957 season was $20,000. He stated that on account of his age he "guessed" he would be classed as a utility player. At the time the divorce was granted his income consisted of a salary of $25,000 a year, plus "certain royalties and other income." He had income in 1951 from such sources as "testimonials and commercial advertising." The record does not disclose the amount received from such sources. However, he stated that since his value as a player was not like it was five or six years ago, he does not receive anything at the present time for testimonials. In 1956 defendant's share of the World Series' receipts was $5,200. He stated that his salary since 1952 was $20,000 per year.

Defendant owns a farm in North Carolina. He testified that this farm consisted of between 190 to 200 acres, with a mortgage against it of $1,500. Plaintiff testified the farm consisted of 360 acres and that defendant received as rent an average of $3,000 to $3,600 per year during the time she was married to him. Defendant testified that the year previous he made something like $200 on the farm after deducting the operating expenses. He denied he had any greater income from the farm in 1951. Defendant has built a new home in North Carolina at a cost of between $20,000 and $23,000, but stated that the mortgage on this home would be around $15,000. Defendant owned a part interest in an apartment house in Belleville, Illinois, which he sold for $8,700, and this sum was apparently used to help finance the building of the house in North Carolina, although the record is not too clear on this point. Defendant formerly owned an interest in a jewelry store in Belleville, Illinois. He sold his interest in the store, receiving about $6,500, which was about what he put into the business. Defendant owns stocks valued at about $14,000. These have been put up as collateral to loans. He receives about $1,200 to $1,300 a year in the form of stock dividends.

Defendant has remarried twice since his divorce from plaintiff. At present he is living with his fifth wife and infant daughter. He rented a house for the 1957 summer season in New Jersey for $200 per month. Defendant, while on the stand, agreed that the needs of his children might have increased by reason of the increase in their ages, but he said: "My returns are probably less." He also testified he was not asking the court to reduce Patricia's allowance, stating that he was willing to continue the payments to Patricia "if I have my privileges of seeing them."

Plaintiff and the children live in Galesburg, Illinois. Plaintiff's parents live with her. She is employed part time, but the record does not show the amount of income received by reason of this employment. At the time of the divorce she received as alimony in gross the sum of $5,500. Plaintiff owns her own home. She receives $27 per month from some source not disclosed by the testimony other than it was from her "deceased husband." She has no other income.

Rex receives $116.50 a month from the United States Government. This is by reason of the death of his natural father who was killed while in the armed service. Plaintiff compiled and introduced in evidence an estimate of the necessary expense of maintaining the children. This was prepared in September, 1956. The monthly household expense was estimated at $376.50, two-thirds of which amount ($251) was allocated as the children's share of the expense. Other personal expenses of the children were listed as $105 per month, making a total estimated cost of $356 for maintenance of the children. In addition, it showed a payment of $27.50 per month as a premium on an insurance policy for Rex.

Defendant testified that he netted about $10,000 a year, after Federal taxes, State taxes, and other deductions, with which to pay his living expenses and to provide support money for the children. The other deductions referred to were not detailed in his testimony.

Appellant contends that the trial court erred in modifying the decree by reducing the amount payable for the support of Rex to $50 per month, and in refusing to increase said payments as prayed by appellant in her motion.

Respondent's position is that the court's order modifying the decree is supported by competent evidence, is reasonable, and in no way detrimental to the welfare of the children.

Respondent at no time has contended that the allowance to Patricia of $150 per month was excessive under the circumstances. In fact, in his motion, he suggest-

ed that she be allowed said amount and, at the trial, testified that he was not asking the court to reduce the amount payable to her. But, as to Rex, his attitude was quite different. In his motion, he suggested that the allowance for the support of Rex be reduced to $50 per month. Several reasons were advanced why said reduction should be made. One reason was that "Rex Slaughter is an adopted son of the defendant, * * * and that said plaintiff is presently receiving an amount of approximately $100.00 per month under a Federal pension." In this court, respondent advances the same argument in support of the trial court's ruling.

■ The general effect of an adoption under our statute is to create a status between the adoptive parent and adopted child identical with that existing between a natural parent and his child. Sections 453.090 and 453.170 RSMo 1949, V.A.M.S. The obligation of the adopting parent is the same as if he were a natural parent, and hence he is bound to give the child the same support and maintenance to which it would be entitled if born to him in lawful wedlock, and he is subject to all civil remedies allowed against a natural parent to enforce said obligation. 2 C.J.S. Adoption of Children § 56, page 447

■■ It is well settled in this jurisdiction, as well as elsewhere, that a father is bound to support his minor children, if able to do so, even though they have property of their own. Otte v. Becton, 55 Mo. 99; Guion v. Guion's Administrator, 16 Mo. 48; 46 C.J., Parent and Child, § 38, page 1261; 67 C.J.S. Parent and Child § 15c, page 694. The only exception to this rule is where, under a trust, will or agreement, a fund is created for the express purpose of maintenance and education of the minor child or children. In such cases, the application of the property or income for that purpose must be made without regard to the ability of parents to support said minors. Cleveland Clinic Foundation v. Humphrys,

6 Cir., 97 F.2d 849, 121 A.L.R. 163. See note, 121 A.L.R. 197, 200. But such is not the situation in the case at bar. The record shows that Rex is receiving the sum of $116.50 per month from the Federal Government as compensation for the death of his natural father while in the armed services. There is nothing in the Act of Congress creating this right to compensation which makes it mandatory that the payments received be applied to maintenance and support. Such being the case, the defendant may not insist that any part of the money so received be used to relieve him of his primary duty to support his minor child, if his own means are adequate for that purpose. Fulde v. Stone, 196 Misc. 732, 92 N.Y.S.2d 298.

■ Does the evidence in the case at bar show that defendant has adequate means to fully support Rex, irrespective of the latter's income? Certain factors are to be considered in determining this question. The relative size of the income or means of the father and of the child must be considered. The needs of the child must be ascertained. The number of persons dependent upon the father should be taken into account, as well as other items of legitimate expense to be met by the father. Also, consideration should be given to the ability of the father to earn a living. We have considered the evidence in the light of these tests and have determined that defendant is in no position to insist that the money received by Rex from the Federal Government be used for the child's support.

At the time of the hearing below respondent's salary was $20,000 per year. He owned securities of the value of at least $14,000, on which he received dividends of $1,200 to $1,300 per year. He owns a large farm in North Carolina. This farm contains 190 to 200 acres, according to respondent's testimony, on which there is a mortgage of $1,500. The allowance to Patricia is in the amount of $150

per month. Respondent does not complain of this amount, thereby conceding the amount is reasonable.

We find from all the facts and circumstances that the sum of $150 per month for each child is reasonably necessary to maintain the children according to their station in life, and that the defendant is able to contribute said sums. The court erred in reducing Rex' allowance and in refusing to increase same to $150 per month. There is ample justification for such increase. There has been a change of conditions since the amount was fixed at $75. Rex is older than he was at that time, and his needs are greater. Also, the cost of living has increased.

In reaching the conclusion that the trial court erred in refusing to increase the allowance for Rex, we have considered the argument that, as a baseball player, respondent's days are numbered, and that his income may diminish as a result thereof. On the other hand, respondent may be able to secure more lucrative employment by reason of the prominence he has attained as one of the great figures in the baseball world. Whether his income will diminish, remain approximately the same, or increase, is a speculative matter at this time. If the time ever comes when respondent is unable to meet his obligation to his children, the court will be open to him for relief by way of further modification of the decree.

■ Finally, it is urged by respondent that the reduction of the allowance for the support of Rex was proper for the reason that appellant has on occasions in the past deprived respondent of his visitation rights with respect to these children. We cannot accept this view. If this mother, by depriving the father of the right of visitation or of his right to temporary custody, were guilty of contempt of court (which we do not hold), it could subject her, but never the child, to penalties; and, it does not relieve the father of the duty to support

the child under circumstances as shown in this case.

■ Appellant complains that the court erred in failing to modify the decree by requiring defendant to post security for the payment of the maintenance award. The authority for such requirement is found in Section 452.070 RSMo 1949, V.A. M.S. By said section it is provided that, where the wife is plaintiff, the trial court may order defendant to give security for alimony and maintenance. Whether this should be done rests within the sound discretion of the trial court. The trial court in the instant case did not see fit to order defendant to give security, and we believe that in so ruling the trial court did not abuse its discretion. Defendant is clearly solvent. There is no evidence that he is dissipating his assets. In the past he has paid the installments due with reasonable promptness, except certain payments due in 1957. Defendant admitted that he withheld payments for the monthly support from January to April of that year due to the fact that he had been denied the custody rights of the children for the Christmas vacation period in 1956. His conduct in this respect, although improper, was understandable. After plaintiff employed counsel on that occasion, defendant paid said installments. There was no evidence that defendant wrongfully withheld payments either before or since that time. We cannot say that there is a likelihood that he will defy the court's orders in the future. If he should, plaintiff at that time may pursue her rights under Section 452.070, supra. In our judgment, the trial court did not abuse its discretion in refusing to order defendant to give security, as requested by plaintiff.

The judgment of the Circuit Court, dated May 27, 1957, is affirmed in form as rendered, except that the allowance to plaintiff for the support of Rex Slaughter shall be increased to $150 per month, and the cause is remanded with directions to the Circuit Court to modify its judgment of

May 27, 1957, accordingly—liability for said payments of $150 per month to be effective as of June 1, 1957.

RUDDY, P. J., and JOHN K. REGAN, Special Judge, concur.