931 S.W.2d 218 (1996)
In re the MARRIAGE OF A.S.A. and K.L.A.
A.S.A., SR., Petitioner-Respondent,
v.
K.L.W., Respondent-Appellant,
V.W. and P.D.W., Intervenors-Appellants.
In re the ADOPTION OF A.S.A., JR. and K.J.A.
A.S.A., SR. and J.J.A., Petitioners-Respondents,
v.
K.L.W., Respondent-Appellant.
No. 20768.
Missouri Court of Appeals, Southern District, Division Two.
October 22, 1996.
Motion for Rehearing or Transfer Denied November 8, 1996.
*220 Donald Rhodes, Bloomfield, for appellant.
Barbara A. Godley, Kennett, for respondents.
SHRUM, Judge.
This is a step-parent adoption case brought by A.S.A., Sr. (Father) and his present wife, J.J.A. (Adoptive Mother).[1] The two children who are the subjects of the adoption petition were born of the now-dissolved marriage of Father and K.L.W. (Mother). The adoption case was consolidated with a separate case brought by Mother in which she sought to modify the dissolution decree so as to give her custody of the two children, or alternatively, provide Mother with specified visitation periods.[2] Mother's parents, V.W. and P.D.W. (Intervenors), were allowed to intervene in the modification case.[3] The trial court terminated Mother's parental rights to the children, decreed their adoption, and denied Mother and Intervenors any relief in the modification case. Mother and Intervenors appeal.[4] This court affirms.
Father and Mother were married on June 26, 1987. Two children were born of their marriage: Son, born September 19, 1987; and Daughter, born December 29, 1990. Father and Mother separated on February 18, 1991, and their marriage was dissolved on May 9, 1991, in Clay County, Arkansas. Pursuant to a stipulation and property agreement incorporated into the divorce decree, Mother was awarded custody of the two children and Father was given the right to visit the children. Father was ordered to pay child support of $60 per week.
Mother began dating a man in 1992 who introduced her to cocaine, which she admitted using from that time until Memorial Day, 1993. She also admitted to being a heavy user of "crank" and various other illegal drugs. Mother bore a child by another man in October 1992, which she gave up for adoption because she was unable to care for it. Also in this period following her divorce from Father, Mother pled guilty and was placed on probation in three separate criminal matters: forgery, passing bad checks, and two counts of fraudulent use of a credit card.
On July 17, 1992, in Dunklin County, Missouri, Father filed a petition to register the foreign decree of divorce and requested a transfer of custody of the children to him. On August 21, 1992, the court ordered custody to be vested in Father, subject to reasonable rights of visitation in Mother. At that time, the two children were already in Father's *221 physical custody, since Mother had left them with him when going to Mississippi to visit the man she had been dating (the one who had introduced her to cocaine). Mother said she had no place to live during this period of time.
Mother bore another child in June 1994, and married the child's father in October 1994. Father also re-married, in June 1993. Father and Mother's two children have lived with Father continuously since the change of custody in August 1992.
On December 14, 1994, Mother filed a motion for contempt alleging that Father was refusing to allow her to exercise her visitation rights, along with a motion to modify asking that periods of visitation be specifically delineated. On December 27, 1994, Respondents filed a petition for adoption of the two children, alleging that Mother had abandoned and neglected the children. Mother subsequently amended her motion to modify to request that custody be transferred to her, but essentially abandoned that request at trial, choosing instead to pursue her visitation requests.
The modification and adoption proceedings were consolidated on December 28, 1994. Intervenors were allowed to join the modification proceeding, and Intervenors filed a motion for visitation privileges. A trial was held on the consolidated cases on July 6, 1995. The trial court found that Mother had willfully abandoned and neglected the minor children for a period of time including but not limited to six months immediately prior to the filing of the petition for adoption, and that adoption of the children by Respondents would be in their best interests. On appeal, Appellants contend that there was not substantial evidence to support the trial court's findings that Mother had abandoned and neglected the children and that the adoption was in the best interests of the children. They also assert that the trial court erred in denying Mother's motion to modify and motion for contempt as well as Intervenors' motion for visitation privileges.
Point I: Abandonment and Neglect
In their first point relied on, Appellants assert that the trial court erred in granting Respondents' petition for adoption because there was no clear, cogent, and convincing evidence that the children had been abandoned or neglected by Mother. We disagree.
We are cognizant of the overarching principles that adoption statutes are strictly construed in favor of natural parents, and that each adoption must be adjudged on its own unique set of facts. H.W.S. v. C.T., 827 S.W.2d 237, 239[12] (Mo.App.1992). However, the "paramount concern" is still the best interest of the child. Adoption of R.A.B. v. R.A.B., 562 S.W.2d 356, 357 (Mo. banc 1978). See also § 453.005.[5]
Consent of the natural parents or involuntary termination of their parental rights is a prerequisite to any adoption. Matter of J.F.K., 853 S.W.2d 932, 934[1] (Mo. banc 1993). While the question of whether an adoption is in the best interests of the child is one of "paramount concern," it is not reached until it has been determined that consent has been given or the need for consent has been obviated by one of several statutory grounds. Adoption of R.A.B., 562 S.W.2d at 357. Among other grounds, consent need not be obtained from:
"A parent who has for a period of at least six months, for a child one year of age or older, ... immediately prior to the filing of the petition for adoption, willfully abandoned the child or, for a period of at least six months immediately prior to the filing of the petition for adoption, willfully, substantially and continuously neglected to provide him with necessary care and protection."
§ 453.040(5). The terms "abandonment" and "neglect" in § 453.040(5) are used in the disjunctive and therefore either ground, if supported by substantial evidence, will support an adoption. Matter of Adoption of Pearson, 612 S.W.2d 30, 35[7] (Mo.App.1981). While our discussion will be limited to neglect for purposes of economy, we recognize that these two terms embody different, but *222 not mutually exclusive concepts. G.S.M. v. T.H.B., 786 S.W.2d 898, 900 (Mo.App.1990).
Neglect focuses on physical deprivation or harm. Id. The essence of neglect has been characterized as a "failure to perform the duty with which the parent is charged by the law and by conscience." In re C., C., & C., 380 S.W.2d 510, 515 (Mo.App. 1964). "In stepparent adoptions, it quite often is shown by a failure to provide support, without just cause or excuse, whether ordered by judicial decree or not." G.S.M., 786 S.W.2d at 900. A non-custodial parent's failure to contribute to the financial support of his or her children combined with other evidence of lack of contact is sufficient to sustain a finding of willful neglect in failing to provide proper care and maintenance. S.C.H. v. C.W.H., 587 S.W.2d 945, 948 (Mo. App.1979).
Neglect, which must be willful under § 453.040(5), is thus a question of intent, which is frequently a fact inferred from relevant conduct, particularly within the statutory period, but also before and after this period. See id. That is, the greatest weight is given to conduct within the statutory period, and the least weight is given to conduct after the petition for adoption was filed. Matter of A.L.H., 906 S.W.2d 373, 376[8] (Mo.App.1995). Intent must be shown by clear, cogent, and convincing evidence. Matter of T.C.M., 651 S.W.2d 525, 531 (Mo.App. 1983). This court has already discussed the meaning of this standard at length, in In Interest of M.J.A., 826 S.W.2d 890 (Mo.App. 1992):
"The clear, cogent, and convincing standard of proof ... is consistent with the Due Process Clause of the Fourteenth Amendment which requires the state, in a parental rights termination case, to `support its allegations by at least clear and convincing evidence.' Santosky v. Kramer, 455 U.S. 745, 747-48, 102 S.Ct. 1388, 1391-92, 71 L.Ed.2d 599, 603 (1982). A clear and convincing evidence standard `adequately conveys to the factfinder the level of subjective certainty about his factual conclusions necessary to satisfy due process.' Id. at 769, 102 S.Ct. at 1403, 71 L.Ed.2d at 617.
"The Missouri Supreme Court has stated that where the clear, cogent, and convincing evidence standard applies, `the court should be clearly convinced of the affirmative of the proposition to be proved.' Grissum v. Reesman, 505 S.W.2d 81, 85-86 (Mo.1974) (emphasis in original). The Grissum court noted, `The word "cogent" adds little, if anything; it means impelling, appealing to one's reason, or convincing.' Id. at 86.
"In several opinions, various districts of the Missouri Court of Appeals have cited the following definition of clear and convincing evidence, drawn from In re Sedillo, 84 N.M. 10, 498 P.2d 1353, 1355 (1972):
For evidence to be clear and convincing, it must instantly tilt the scales in the affirmative when weighed against the evidence in opposition and the fact finder's mind is left with an abiding conviction that the evidence is true.

See, e.g., Matter of O'Brien, 600 S.W.2d 695, 697 (Mo.App.1980); In the Interest of J.A.J., 652 S.W.2d 745, 748 (Mo.App.1983); In the Interest of M.N.M., 681 S.W.2d 457, 459 (Mo.App.1984); In re J.D.K., 685 S.W.2d 876, 879 (Mo.App.1984). There need not be one single event that `instantly tilts the scales.' J.D.K., 685 S.W.2d at 880.
"Our review of a parental rights termination decree is governed by the principles set forth in Murphy v. Carron, 536 S.W.2d 30 (Mo. banc 1976). See, e.g., In re Adoption of W.B.L., 681 S.W.2d 452, 454 (Mo. banc 1984). Thus, we will affirm the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. Murphy v. Carron, 536 S.W.2d at 32; W.B.L., 681 S.W.2d at 454. In a parental rights termination case, `substantial evidence,' as the term is used in Murphy v. Carron, means `clear, cogent, and convincing evidence.' O'Brien, 600 S.W.2d at 698.
"The `clear, cogent, and convincing' standard of proof may be met although the ... court has contrary evidence before it. W.B.L., 681 S.W.2d at 454. Moreover, evidence in the record which might have supported a different conclusion does not necessarily *223 demonstrate that the ... court's determination is against the weight of the evidence. Id. Thus we give due regard to the ... court's opportunity to judge the credibility of witnesses. In the Interest of D.G.N. [v. S.M.], 691 S.W.2d 909, 912 (Mo. banc 1985). Where there is conflicting evidence, we review the facts in the light most favorable to the judgment. In the Interest of M.E.W., 729 S.W.2d 194, 196 (Mo. banc 1987)."
Id. at 896-97[1-3] (footnote omitted).
Here, the statutory period is defined by the six months prior to the filing of the petition for adoption on December 27, 1994, that is, June 27 to December 27, 1994. The trial court found that Mother's neglect of the children "continues at the time of trial and existed for a period of time including but not limited to the period of six months immediately prior to the filing of the petition in this matter." We examine the evidence of such neglect.
As we have said, one component of neglect is the failure to provide support. G.S.M., 786 S.W.2d at 900. Mother was providing support for the children after Father was awarded custody for a brief time prior to the statutory period. According to her testimony, she paid about $60 "like every week, every other week," but "[i]t stopped in January of `93." However, Father and his new wife both denied that Mother had ever done anything to help financially support the children. The only other evidence of anything in the nature of financial support was the Christmas gifts Mother purchased for the children for the years 1992, 1993, and 1994, of which all but the 1992 gifts were still in her possession at the time of trial. Nevertheless, slight acknowledgements such as Christmas gifts do not prevent neglect from occurring. In re Adoption of H___, 712 S.W.2d 726, 728 (Mo.App.1986). "Such token efforts do not atone for the lack of support or visitation during the relevant period." Id. The evidence clearly showed that Mother failed to provide support. As to whether Mother did so without just cause or excuse, her brief argues that Respondents "adduced no evidence addressing the subject of [Mother's] ability to provide financial support for her children or any declination by her to do so within her means." Proof of just cause or excuse is Mother's burden, not Respondents'. Requiring Respondents to prove the absence of justification would "place[ ] an unfair burden on them" and "would be akin to requiring them to prove a negative." G.S.M., 786 S.W.2d at 901. The burden is on Mother "to at least go forward with evidence showing the failure was not willful." Id. at 899[7]. Mother did not do so.
Mother did testify at trial that she was not employed, and this is offered as an excuse for non-support in her brief. Mother argues that the "clear inference from all the evidence is that [Mother] was without the means to contribute to [her children's] support." Mother did not claim to be unemployable, in fact she testified that she did not plan to become employed because she was "enjoying being a homemaker and a mother." Mother's choice not to be employed does not leave her without the means to contribute to her children's support. The income of Mother's present spouse is approximately $35,000, and they live in a seven-room house. Although Mother's spouse does not owe a duty of support, this last-mentioned evidence suggests that Mother could have made at least a minimal contribution and thus evince her intent to continue the parent-child relationship. See In Interest of M.L.K., 804 S.W.2d 398, 402[1] (Mo.App.1991). "Evidence of this intent, a central consideration in the court's determination, is lacking when, such as here, the parent fails to make any contribution, no matter how diminutive the amount." Id. The evidence clearly and convincingly indicates that Mother failed to provide support for her children during the statutory period without just cause or excuse.
Another component of neglect is lack of contact. Mother's own testimony revealed that she had not visited the children within the statutory period. In fact, at the time of trial, her most recent visit was in March 1993. Mother claimed that although she had not done so previously, she began requesting visits in May 1993. Mother said that since May of 1993, she had called Father at work requesting visitation "two or three times a week" until "four or five months" before trial.
*224 She also said that "[e]very time that I've called him, he has denied me seeing my children." Father denied this, testifying that Mother's last request for visitation had come in September 1993. Additionally, Mother admitted that no one had prevented her from attending such public events as her son's graduation and Little League baseball games and that she had made no attempt to do so. Apparently, the court did not believe that Mother requested visitation during the statutory period. We afford this determination of credibility due regard. Given the clear, cogent, and convincing evidence of Mother's unjustified failure to contribute to the financial support of her children and of her lack of contact with them, the trial court did not err in finding that Mother willfully neglected her children. See S.C.H. v. C.W.H., 587 S.W.2d at 948.
Our finding on the ground of neglect makes examination of the ground of abandonment unnecessary. See Matter of A.L.H., 906 S.W.2d at 379. Point I is denied.
Point II: Best Interests of the Children
Since we have determined that the need for consent to the adoption was obviated by Mother's neglect, we reach the issue of whether the adoption was in the best interests of the children. In their second point relied on, Appellants contend that the trial court erred in finding that adoption by Respondents would be in the best interest of the children. We disagree.
As with the grounds obviating consent, the quantum of proof required for a court to determine that a step-parent adoption is in the best interests of the child, thus terminating the parental rights of the non-adopting parent, is clear, cogent, and convincing evidence. Matter of T.C.M., 651 S.W.2d at 531 n. 8. Nevertheless, a finding concerning the best interests of the child should be accorded greater deference than other findings. G.S.M., 786 S.W.2d at 903. A court must consider such factors as the detrimental effects of the termination of parental rights and the child's emotional ties to and interaction with the non-custodial parent. Id.
The evidence in the instant case shows very little indication of ties to or contact with Mother. The children have been in the custody of Father since August of 1992, and Mother has not visited them since early 1993. Mother concedes that she is not even acquainted with her daughter, the younger of the two children. Daughter thinks of Adoptive Mother as her mom and does not recognize Mother as such. Son calls Father's spouse "mom," but also recognizes Mother. Son wants to live with Respondents and have the option to visit Mother when he wants to.
Mother concedes that the children are in a good home with Respondents, and that Adoptive Mother is doing a good job raising the children. Adoptive Mother is clearly the primary care giver for the children. In fact, she has helped take care of the children since September 1992, well before she married Father in June 1993. Adoptive Mother even helped provide for the children's material needs in the period before she married Father.
Father stated that one of his motives for pursuing the adoption by Adoptive Mother was his wish that she raise the children in the event that he should meet an untimely death. Father had no objection to allowing Mother and Intervenors to see the children, although he felt that adoption was necessary for the children to be able to do this on their own terms.
With the exception of a brief period of support (August 1992 to January 1993), which Respondents deny receiving, and the occasional Christmas gift, Mother has been content to allow Respondents to totally financially support her children. While Respondents were raising the children, Mother travelled several states away to be with the man who introduced her to drugs, as she continued to indulge this habit. By any testimony, her contact with the children during this period ending in May of 1993, when she ostensibly kicked her drug habit, was sporadic and infrequent at best. When Mother met her current spouse, bore his child, subsequently married him, and settled into a homemaker role, her contact with the children completely evaporated.
*225 The evidence shows that Mother's history of drug use is a serious concern. An admitted heavy user of various illegal drugs, Mother claims to have ceased using drugs as of May 1993. Mother has never sought professional treatment for her addiction, and the evidence shows that it is rare for someone to overcome a drug addiction without professional help.
The evidence that Respondents have provided Son and Daughter with a stable, healthy, and loving home is uncontroverted, as is their ability to educate and care for them. Given that Mother has neglected the children, and the clear and convincing evidence that the adoption and termination of Mother's parental rights would be in the best interests of the children, we cannot say that the trial court's granting of the adoption was unsupported by substantial evidence or was against the weight of the evidence.
Point II is denied.
Point III: Post-Adoption Parental and Grandparental Rights
In Point III, Appellants aver that the trial court erred in denying Mother's motions to modify and for contempt as well as Intervenors' motion for visitation privileges on the grounds that Respondents' petition for adoption had been granted, because Mother did not consent to the adoption, and the termination of her parental rights was not supported by clear, cogent, and convincing evidence.
Appellants' third point is little more than a synthesis of Points I and II, an observation which is bolstered by Point III's brevity and total dearth of citation to authority. In addressing Point I, we held that the trial court did not err in determining that the need for Mother's consent to the adoption was obviated by her willful neglect of the children, a determination which was supported by clear, cogent, and convincing evidence. In addressing Point II, we found that the trial court committed no error in determining that granting the adoption, concomitantly terminating Mother's parental rights, was in the best interests of the children, a conclusion that was also supported by clear, cogent, and convincing evidence. Our decision on Points I and II is dispositive of Appellants' third point.
The effect of the judgment of adoption on Mother's parental rights is unequivocally defined by statute: "When a child is adopted in accordance with the provisions of this chapter, all legal relationships and all rights and duties between such child and his natural parents ... shall cease and determine." § 453.090.1. Any rights Mother may have had with respect to visitation privileges were abrogated upon the granting of the adoption.
As to Intervenors' rights to visitation, the aforementioned statutory abrogation extends to grandparentsparents of the natural parent whose rights are taken away. See Aegerter v. Thompson, 610 S.W.2d 308, 310 (Mo.App.1980). Any rights Intervenors may have had were likewise extirpated by the judgment of adoption.
Point III is denied.
We affirm the trial court's judgment of adoption.
CROW, P.J., and MONTGOMERY, C.J., concur.
NOTES
[1] In this opinion, we refer to Father and Adoptive Mother collectively as "Respondents."
[2] On appeal, no one questions the propriety of consolidating a juvenile case with a non-juvenile court proceeding.
[3] More accurately, V.W. is the step-father of Mother. We mean no disrespect in making this clarification. It is only intended to show that V.W. is not Mother's natural father.
[4] Collectively, we refer to Mother and Intervenors as "Appellants."
[5] All statutory references are to RSMo 1994, unless otherwise indicated.