965 S.W.2d 444 (1998)
In The Matter of B.S.R.,
J.R. and P.R., Respondents,
v.
J.R.R. (Natural Father), Appellant.
No. WD 53577.
Missouri Court of Appeals, Western District.
March 24, 1998.
*446 John W. Dennis, Jr. Independence, for Appellant.
Gwen A. Edwards, Kansas City, for Respondents.
Joseph Y. DeCuyper, Kansas City, for Guardian Ad Litem.
Before EDWIN H. SMITH, P.J., and SMART and ELLIS, JJ.
EDWIN H. SMITH, Presiding Judge.
J.R.R. appeals the judgment of the Circuit Court of Clay County terminating his parental rights to his minor son, B.S.R., and granting the petition of J.R. and P.R., the respondents, for his adoption. The appellant advances two points on appeal. He claims that, in granting the adoption, the trial court erred, in that in doing so, it erroneously declared and applied the law in concluding that his consent to the adoption was unnecessary due to his: (1) willful abandonment of B.S.R.; or, (2) willful, substantial and continuous neglect of him.
We affirm.

Facts
On November 17, 1980, B.S.R. was born to J.R.R. and his then wife. Ten days later, all three were involved in an automobile accident. B.S.R.'s mother was killed, but his father survived. B.S.R. also survived, but suffered severe injuries which rendered him permanently mentally incapacitated and physically disabled. He cannot verbally communicate, nor can he walk or stand up. He cannot care for his personal needs without assistance and supervision.
As a result of the accident, the appellant filed a lawsuit on behalf of B.S.R. against the driver of the other car, which resulted in a settlement of $380,000 to be paid to B.S.R.'s conservatorship estate and an annuity which would pay the estate $6,430 per month for the rest of B.S.R.'s life or twenty years, whichever is longer. This would result in a minimum payment of $1,543,200 to the estate of B.S.R. The appellant received $720,000 from the same settlement for his own claims. In addition, he filed suit for medical malpractice against B.S.R.'s medical provider which resulted in a settlement whereby B.S.R.'s estate would receive an additional $740 per month for the duration of his life.
In August of 1981, B.S.R. moved in with his aunt and uncle, J.R. and P.R., the respondents. J.R. is the older brother of the appellant. B.S.R. has lived with respondents since 1981. The appellant, as conservator of B.S.R.'s estate, made payments from the estate to the respondents for the care of B.S.R. However, he admitted that he used funds from the estate to pay for his own personal expenses. As a result, on February 7, 1994, he was removed as the conservator of B.S.R.'s estate for cause.
In 1993, the respondents and K.C., P.R.'s daughter from a prior marriage, filed a guardianship action wherein they sought to be declared the legal guardians of B.S.R. This action was contested by the appellant, although he testified that it was in B.S.R.'s best interests to continue to live with the respondents. The respondents testified that the appellant did not show concern for B.S.R. and had alluded to his possible institutionalization.
On June 22, 1995, the respondents and K.C. were named as B.S.R.'s guardians by order of the Probate Division in the Circuit Court of Cooper County, Missouri. In its findings of fact and conclusions of law, the probate court found that the appellant failed to financially support B.S.R. and had abandoned the child. The appellant filed a notice *447 of appeal. On August 31, 1995, the parties reached a settlement agreement. The agreement provided for, among other things, visitation for the appellant with B.S.R. either at his school or the home of the respondents upon seventy-two hours advance notice.
On January 8, 1996, the respondents filed a petition for adoption of B.S.R. The trial court found that, although B.S.R. was over the age of fourteen, he does not have sufficient mental capacity to give a written consent to the adoption. The trial court also held "[t]hat the findings of fact and conclusions of law entered on June 22, 1995, by the Probate Court of Cooper County on the Guardianship Application," are conclusive "in this matter as to all issues of law and fact decided in that matter which are relevant to this adoption case...."
In response to the respondents' request for admissions, the appellant admitted that between July 7, 1995, and the date of the filing of the petition for adoption, January 8, 1996, he did not expend any of his personal funds for the support of his son. He also admitted that he did not visit B.S.R. between the date of the settlement of the guardianship action on August 31, 1995, and the date the respondents filed for adoption on January 8, 1996, and only visited him once during the pendency of the adoption action. J.R. testified that, in the early years, the appellant came to visit B.S.R. often. He also testified that, from 1983 to 1985, the appellant would visit B.S.R. on occasion. In 1985, the appellant married his current wife, I.R. The appellant and I.R. came to visit B.S.R. about three times per year.
At trial, the appellant testified that he requested unsupervised visitation with B.S.R. in a letter to the respondents dated July 18, 1995. The respondents replied that such visitation must occur within their home, which the appellant refused. Just prior to the settlement agreement in the guardianship action, the appellant filed a motion for court-ordered visitation in the guardianship action. In February, 1996, the appellant wrote to the respondents to request visitation with B.S.R. at his school. Both the appellant and I.R. testified that their attempts to visit B.S.R. in his school had been unsuccessful. Prior to the filing of the petition for adoption, the appellant's last visitation with B.S.R. occurred pursuant to court order in June, 1995. In addition, the appellant testified that he does not believe it is important for B.S.R. to have contact with him, he "lost a son" in the automobile accident. He believes his son does not know him from anyone else. He does not visit his son because "it's a little bit embarrassing and a little hard to do."
On October 8, 1996, the Circuit Court of Clay County entered a judgment terminating the parental rights of the appellant based upon findings of willful abandonment and willful, substantial and continuous neglect and granting the respondents' petition for adoption, pursuant to § 453.040, wherein it made the following findings of fact and conclusions of law:
20. That the conduct of the natural father during the six months prior to the filing of the adoption petition and after the adoption petition was filed, show that the natural father had no intent to fulfill his parental duties and obligations to the minor child.
21. That the conduct of the natural father during the six months prior to the filing of the adoption petition and after the adoption petition was filed, show that the natural father had no intent to institute, maintain or preserve a parent/child relationship with the minor child.
22. That the minor child's estate having substantial assets did not and does not legally absolve the natural father of his legal obligation to provide financial support to the minor child.
23. That the natural father's attempts to have visitation or contact with the minor child for the six months prior to the filing of the adoption petition, were mere token efforts by the natural father and not sufficient to establish or maintain a parent/child relationship with the minor child.
24. That the natural father's one half-hour visit with the minor child, two and one-half months after the filing of the adoption petition, was an effort to maintain the natural father's status as an heir of his son's estate and not an effort to establish *448 or maintain a parent/child relationship with the minor child.
25. That the actions of the natural father toward the minor child during the six months prior to the filing of the adoption or after the adoption petition was filed up to the time of the trial of this cause, were mere token efforts and not sufficient to show a repentance of his prior abandonment of the minor child.
26. That the Petitioners did not interfere with the natural father's visitation rights during the six months prior to the filing of the adoption petition or after the adoption petition was filed up to the time of the trial of this cause.
This appeal follows.

Standard of Review
Our review of a circuit court's judgment granting an adoption petition is governed by Murphy v. Carron, 536 S.W.2d 30 (Mo.banc 1976). H.W.S. v. C.T., 827 S.W.2d 237, 240 (Mo.App.1992). We will sustain the judgment of the trial court unless there is no substantial evidence to support it, unless it erroneously declares or applies the law, or unless it is against the weight of the evidence. Id.

I.
Section 453.040[1] authorizes the adoption of a child without the consent of a natural parent when:
[a] parent who has for a period of at least six months, for a child one year of age or older ... immediately prior to the filing of the petition for adoption, willfully abandoned the child or, for a period of at least six months immediately prior to the filing of the petition for adoption, willfully, substantially and continuously neglected to provide him with the necessary care and protection.
§ 453.040(5)[2]. In this respect, "[t]he terms `abandoned' and `neglected' are used disjunctively and either ground, if supported by substantial evidence, will support termination of parental rights." C.B.L. v. K.E.L., 937 S.W.2d 734, 737 (Mo.App.1996) (citations omitted). In the case at bar, the circuit court granted the respondents' petition for adoption without the consent of the appellant based upon both willful abandonment and willful, substantial and continuous neglect.
On appeal, the appellant claims the trial court erred by granting the respondents' petition for adoption without his consent on the bases of willful abandonment and willful, substantial and continuous neglect. Although the appellant characterizes his claims of error in terms of "misstatements and misapplications of the law," his argument clearly reflects that they are based upon the trial court's decision being against the weight of the evidence. Thus, our review will be conducted on this basis, and, as such, we will affirm the decision of the circuit court granting the respondents' petition for adoption without the consent of the appellant on the basis of either his willful abandonment or willful, substantial and continuous neglect of B.S.R. if either is found not to be against the weight of the evidence. H.W.S., 827 S.W.2d at 240. Because we find that the appellant's second point concerning his alleged willful, substantial and continuous neglect disposes of his appeal in the most direct and expeditious manner, we will address it first.
*449 The issue of "willful neglect," in the context of § 453.040(5), normally focuses on physical deprivation or harm. C.B.L., 937 S.W.2d at 737. It is defined as "primarily a failure to perform the duty imposed upon the parent by law and by conscience." Id. It has been further defined as "neglect that is `intentional, deliberate, and without just cause or excuse, evincing a settled purpose to forego... parental duties over the period of time which the statute prescribes.'" Id. (quoting In the Matter of S.C.H. v. C.W.H., 587 S.W.2d 945 (Mo.App.1979)) (emphasis supplied). Thus, ultimately, neglect is a question of an intent to forego parental duties, "which generally is an inferred fact, determined by conduct within the statutory period, combined with relevant conduct both before and after the period." C.B.L., 937 S.W.2d at 737. "That is, the greatest weight is given to conduct within the statutory period, and the least weight is given to conduct after the petition for adoption was filed." In re Marriage of A.S.A., 931 S.W.2d 218, 222 (Mo.App.1996).
"Proof of intent must be shown by clear, cogent and convincing evidence." C.B.L., 937 S.W.2d at 737. Clear, cogent, and convincing evidence is evidence which instantly tilts the scales in the affirmative when weighed against evidence in opposition. Id. "`The "clear, cogent and convincing" standard of proof may be met although the... court has contrary evidence before it.'" In re Marriage of A.S.A., 931 S.W.2d at 222 (quoting In re Adoption of W.B.L., 681 S.W.2d 452, 454 (Mo.banc 1984)).
The relevant six-month statutory period provided for in § 453.040, as applied to the case at bar, would be the six months prior to the respondents' filing of their petition for adoption of B.S.R. on January 8, 1996, that is, July 8, 1995, to January 8, 1996. In determining whether the appellant evinced an intent to forego his parental duties to B.S.R. during this time frame, we first examine what constitutes "parental duties." In this respect, it is well settled that
[a] non-custodial parent's failure to contribute to the financial support of his or her children combined with other evidence of lack of contact is sufficient to sustain a finding of willful neglect in failing to provide proper care and maintenance.
In re Marriage of A.S.A., 931 S.W.2d at 222. Thus, "parental duties" includes both an obligation to provide financial support for a minor child, as well as an obligation to maintain meaningful contact with him or her. As such, we will examine the record to determine if the evidence was sufficient to establish the appellant's failure to provide financial support for B.S.R., as well as his failure to maintain meaningful contact with him.
As to financial support by a parent, it is well settled that every parent has an obligation to support his or her child as fully as his or her means will allow. Elliott v. Elliott, 920 S.W.2d 570, 578 (Mo.App.1996); Dycus v. Cross, 869 S.W.2d 745, 750 (Mo. banc 1994); Oberg v. Oberg, 869 S.W.2d 235, 238 (Mo.App.1993). Here, the appellant admitted that from July 7, 1995, to January 8, 1996, he did not expend any of his personal funds for the support of B.S.R. In fact, the record reflects that all of B.S.R.'s expenses were being fully provided for by a conservatorship fund belonging to him which was created from the settlements of lawsuits filed on his behalf based on his claims for the personal injuries he sustained in the November 27, 1980, motor vehicle accident. The fact that a child has resources of his own to provide for his or her support does not relieve a parent of his or her obligation to financially support the child; rather, it is simply a factor in determining the appropriate amount of support a parent should pay. Weaks v. Weaks, 821 S.W.2d 503, 507 (Mo. banc 1991).
The appellant contends that he fulfilled his obligation to provide financial support for B.S.R. in that he "created" a fund for that purpose. This contention is based upon his argument that B.S.R. was and would be amply provided for from the fund which was established from the settlements of the lawsuits discussed, supra. In making this contention, the appellant relies on Slaughter v. Slaughter, 313 S.W.2d 193 (Mo.App.1958). In Slaughter, the court held that where a fund has been set up by a parent from his or her assets for the express purpose of providing *450 for those expenses which comprise his or her obligation of financial support to his or her minor child, that parent has met that obligation.
The appellant's reliance on Slaughter is misplaced in that the fund which he claims he "created" through pursuit of litigation on behalf of B.S.R. is not a "Slaughter" fund. Rather, it was derived from settlements of lawsuits which were filed based upon the legal claims of B.S.R. for the personal injuries he suffered as a result of the automobile accident on November 27, 1980. In this regard, this fund was not derived from the appellant's assets, but rather, from monies paid in satisfaction of B.S.R.'s claims for his personal injuries. Thus, the fund belongs to B.S.R. in that it was created from monies which were paid as compensation for his claims of personal injuries, rather than from any claims or monies belonging to the appellant. See Boley v. Knowles, 905 S.W.2d 86, 88 (Mo.banc 1995) (holding that a claim by a child for damages for pain and suffering, permanent injury, and impairment of earning capacity belongs to the child). The fact that the appellant pursued the litigation on behalf of B.S.R. is of no legal consequence with regard to his obligation to provide financial support to B.S.R. as fully as his own means will allow. As such, based upon the record, we find clear, cogent, and convincing evidence that the appellant failed to fulfill his obligation to provide financial support for B.S.R.
As stated, supra, a parent's failure to provide financial support for a minor child does not in and of itself establish "willful neglect" as provided in § 453.040(5). C.B.L., 937 S.W.2d at 738. The law also requires "other evidence as to a lack of contact" by the parent with the minor child. Id. In this regard, the appellant testified at trial that he had no contact with B.S.R. during the six-month period prior to the filing of the adoption petition on January 8, 1996. Furthermore, he testified that he did not visit his son because "it's a little bit embarrassing and a little hard to do."
In his brief, the appellant essentially argues that he did not visit B.S.R. because the respondents would not allow him to do so. In this respect, the appellant requested unsupervised visitation with B.S.R. to be conducted at his home on July 18, 1995. Although the respondents refused, they still offered to allow a supervised visit with B.S.R. at their home, which the appellant refused to do. In addition, the August 31, 1995, settlement agreement between the parties in the guardianship action provided the appellant with reasonable visitation with B.S.R. at the respondents' home or at B.S.R.'s school. However, the appellant's wife testified at trial that the appellant and she had only been to see B.S.R. once pursuant to the settlement agreement, in March of 1996, two months after the petition for adoption was filed, for about "half an hour, forty-five minutes." Although the appellant was not allowed to have unsupervised visitation with B.S.R. in his home, it is clear from the record that he was free to visit B.S.R. at the respondents' home on several occasions, yet failed to do so. This evidence does not evince an intent on the behalf of the appellant to maintain meaningful contact with B.S.R.
It is well recognized in the law that mere token efforts to maintain a superficial relationship with a minor child through infrequent visits and slight acknowledgments are insufficient to avoid a finding of neglect or abandonment. In re Marriage of A.S.A., 931 S.W.2d at 223; In Interest of Y.M.H., 817 S.W.2d 279 (Mo.App.1991); In Interest of W.A.H., Jr., 725 S.W.2d 150, 156 (Mo.App. 1987). The record here clearly illustrates that the appellant's efforts to maintain contact with B.S.R. were merely token in nature and insufficient to overcome a finding of willful neglect under § 453.040(5). As such based upon the record, we find clear, cogent, and convincing evidence that the appellant failed to maintain meaningful contact with B.S.R.
In summary, we find the record supports by clear, cogent, and convincing evidence the fact that the appellant failed to provide financial support for B.S.R. and failed to maintain meaningful contact with him, and therefore, he willfully neglected B.S.R. as provided in § 453.040(5). As such, we find the trial court did not err in terminating the appellant's *451 parental rights to B.S.R. and granting the respondents' petition for his adoption pursuant to § 453.040.
Because a finding of "willful neglect" alone is sufficient to sustain a petition for adoption without the consent of the natural parents pursuant to § 453.040(5), we need not address the appellant's claim of error as to an adoption based on a finding of "willful abandonment." In re Marriage of A.S.A., 931 S.W.2d at 224.
Point denied.

Conclusion
We affirm the judgment of the Circuit Court of Clay County terminating the appellant's parental rights to B.S.R. and granting the respondents' petition for his adoption.
All concur.
NOTES
[1] All statutory references are to RSMo 1994, unless otherwise indicated.
[2] The version of this section which was in effect at the time the court granted the respondents' petition for adoption authorized an adoption without the consent of a natural parent in five different situations, including where the court found that the natural parent had willfully abandoned or willfully, substantially, and continuously neglected the child as provided in subsection 5. Section 453.040(5) did not require a formal termination of parental rights pursuant to § 211.447, although under § 453.040(1), such a termination of rights would be a basis for a grant of adoption without the consent of a natural parent. In the case at bar, although the court granted the respondents' petition of adoption pursuant to § 453.040(5), it also terminated the appellant's parental rights pursuant to § 211.447, which was unnecessary to effectuate an adoption under § 453.040(5). As such, we need not address whether the termination of the appellant's parental rights pursuant to § 211.447 was correct. We need only determine whether the evidence supported an adoption based on § 453.040(5).