9 S.W.3d 768 (2000)
In the Matter of K.L.C., C.L.D., M.R.C., and A.L.C., minors.
D.L.W. and P.D.C-W., Petitioners-Respondents,
v.
R.C., Respondent-Appellant.
No. 22706.
Missouri Court of Appeals, Southern District, Division Two.
January 28, 2000.
*770 George L. Gundy, Reeds Spring, for Appellant.
Robert S. Wiley, Crane, and Roya R. Hough, Jefferson City, Missouri Dept. of Social Services, Jefferson City, for Respondents.
PHILLIP R. GARRISON, Chief Judge.
R.C. ("Father") appeals from the trial court's judgment terminating his parental rights and granting D.L.W. and P.D.C-W.'s ("Petitioners") petition for adoption of K.L.C., C.L.D., M.R.C., and A.L.C. Father contends that the trial court erred in granting Petitioners temporary legal custody of the minor children and in granting their petition for adoption as there was no clear, cogent and convincing evidence that he and the children's natural mother, K.C. ("Mother"), had willfully abandoned or willfully, substantially and continually neglected the children. We affirm.
Preliminarily, we note that the Division of Family Services ("DFS") has filed a motion to dismiss or alternatively a motion to strike Father's brief for failure to comply with Rule 84.04(c).[1] Rule 84.04(c) requires that a statement of facts in an appellant's brief "be a fair and concise statement of the facts relevant to the questions presented for determination without argument." DFS contends, correctly, that Father's statement of facts, which consists solely of a procedural history of the case, is in violation of this rule. While we do not overlook or condone the deficiencies in Father's brief, we are desirous of deciding cases, especially those pertaining to child custody and the termination of parental rights, on the merits where possible and will do so in this case. DFS's motion is, therefore, overruled.
Father is the natural father of three of the children, K.L.C., born October 31, 1991, M.R.C., born May 27, 1994, and A.L.C., born January 22, 1997. The natural father of C.L.D., born January 29, 1993, was served by publication. Mother has not appealed.
In December 1995, DFS received a hotline call alleging that domestic violence was occurring between Father and Mother, who are both hearing impaired, in the presence of the four minor children, that Father was drinking alcohol, and that up to twenty unrelated people were living in the family's three-bedroom home. DFS investigated, and Mother reported that she had been beaten by Father, whom she believed to be an alcoholic. She also indicated that she had been sexually abused in the past and that C.L.D. was the result of a rape by a man who had been living at their home. DFS offered Mother services to help her separate from Father, but Mother elected to continue the relationship.
K.L.C., C.L.D., and M.R.C. were placed in the temporary legal and physical custody of DFS in December 1995 for placement in foster care upon a finding that Mother was unable to meet the needs of the children and was unwilling to protect them from possible abuse. On January 10, 1996, K.L.C., C.L.D., and M.R.C. were placed in the foster care of Petitioners, where they remain.
On March 1, 1996, the Circuit Court of Christian County entered a Finding of Jurisdiction placing the children in the legal custody of DFS and approving a written service agreement. The service agreement provided that Father and Mother *771 would participate in counseling for alcoholism and physical abuse, that Mother would receive counseling for codependency and self-esteem issues, and that Father and Mother would complete parenting classes.
Father and Mother initially attended counseling regularly, but later became inconsistent in their participation and eventually discontinued it. Father and Mother were also not consistent in keeping their once-a-week visitations with their children. During the period between February and August 1996, Mother, alleging physical and sexual abuse, left Father several times.
On January 22, 1997, Mother gave birth to A.L.C., and on January 24, 1997, A.L.C. was placed in the custody of DFS. DFS found that A.L.C. was without the proper care necessary for her well-being in that Mother had previously been found to have neglected her three other children, had failed to follow her written service agreement with DFS, and had been a victim of domestic violence. A.L.C. was placed in the care of Petitioners until February 4, 1997, when the Circuit Court of Taney County ordered that she be returned to Father and Mother.
Father and Mother entered into a second service agreement, effective February 10, 1997 through August 10, 1997, which stipulated that Father and Mother would maintain an alcohol, drug, and violence-free home; undergo psychiatric/psychological evaluations; comply with the agreed upon visitation schedule; obtain and maintain for at least six months appropriate employment sufficient to provide support; pay $25 in monthly child support to DFS; attend parenting classes; and complete the "Break the Chain" counseling program. In return, DFS agreed to develop a visitation plan and monitor the progress of the family. The agreement also stated that "[c]ompletion of the written service agreement may not mean the children will be returned at that time."
On July 29, 1997, A.L.C. was placed in foster care at Mother's request, as Mother was experiencing suicidal tendencies and did not want A.L.C. left with Father. DFS placed A.L.C. in the temporary custody of Petitioners. A subsequent visit to the pediatrician revealed that A.L.C.'s level of developmental growth was far below average.
As of August 19, 1997, Father and Mother's visitation rights were changed to one visit every other week due to the inconsistency in their visits. The DFS social worker assigned to the case indicated that Father and Mother had "a lot of excuses, car problems, etc," and several times, when they did visit they would leave early. When they visited, Father and Mother would bring gifts to the children for their birthdays and Christmas, and at various times, did purchase toys and clothing for the children. Father and Mother, however, never paid DFS the $25 in monthly child support required by the service agreement.
On September 11, 1997, Petitioners filed for adoption in the Circuit Court of Stone County[2] seeking to adopt all four children. The Petition for Adoption alleged the consent of Father and Mother was not required as the conditions of § 453.040(5)[3] had been satisfied in that Father and Mother had for a period of more than six months immediately prior hereto and prior to the petition for adoption, willfully abandoned the minor children, and for a period of more than six months immediately prior to the filing of the petition for adoption had willfully, substantially and continuously neglected to provide the minor children with the necessary care and protection.
On March 27, 1998, a hearing was held concerning Petitioner's request for temporary custody pending adoption, and Father *772 and Mother's motion for extended visitation. Two social workers testified that Father and Mother had failed to make substantial progress in meeting the goals of the service agreements, and that Father was continuing to abuse Mother and to use alcohol. Following the hearing, legal custody of the four children was awarded to Petitioners, and Father and Mother were granted five hours of unsupervised visitation with the children each Saturday.
On August 4, 1998, DFS received a hotline report alleging that an unrelated, two-year-old girl residing in Father and Mother's home had been sexually molested by another individual staying at the home. The trial court terminated Father and Mother's visitation rights on August 13, 1998, due to this incident. On August 24, 1998, Mother was issued an adult ex parte order of protection against Father. Mother separated from Father on August 25, 1998, and filed for divorce. She still expressed a desire, however, to "work out" the relationship if possible.
A final hearing on the petition for adoption was held in October 1998. Two DFS social workers testified that it was in the children's best interest to remain with the Petitioners, as Father and Mother had not made any substantial progress toward rectifying their situation. Following this hearing, the trial court granted the petition for adoption, finding that Father and Mother had willfully abandoned the minor children for a period of at least six months (sixty days as to A.L.C.) prior to the filing of the petition and had willfully, substantially and continuously neglected to provide the minor children with the necessary care and protection. Father appeals.
In his sole point on appeal, Father alleges that the trial court erred in granting Petitioners' temporary legal custody of the four minor children and in granting their petition for adoption as Petitioners failed to prove by clear and convincing evidence that Father and Mother willfully abandoned or willfully, substantially and continuously neglected the children.
Review of a parental rights termination decree is governed by the principles set forth in Murphy v. Carron, 536 S.W.2d 30 (Mo. banc 1976). See In re Marriage of A.S.A., 931 S.W.2d 218, 222 (Mo.App. S.D.1996). Thus, the judgment will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. Murphy, 536 S.W.2d at 32.
Adoption statutes are strictly construed in favor of natural parents. H.W.S. v. C.T., 827 S.W.2d 237, 239 (Mo.App. E.D.1992). Each adoption must be judged on its own unique set of facts. C.B.L. v. K.E.L., 937 S.W.2d 734, 737 (Mo.App. E.D.1996). Consent of the natural parents or involuntary termination of their parental rights is a prerequisite to any adoption. In re Marriage of A.S.A., 931 S.W.2d at 221. Among other grounds, consent need not be obtained from:
(5) A parent who has for a period of at least six months, for a child one year of age or older, or at least sixty days, for a child under one year of age, immediately prior to the filing of the petition for adoption, willfully abandoned the child or, for a period of at least six months immediately prior to the filing of the petition for adoption, willfully, substantially and continuously neglected to provide him with necessary care and protection.
Section 453.040(5).
The terms "abandoned" and "neglected" as used in § 453.040(5) are disjunctive and consequently, either ground, if supported by substantial evidence, will obviate the need for parental consent. Matter of B.S.R., 965 S.W.2d 444, 448 (Mo.App. W.D.1998). Abandonment and neglect are different, but not mutually exclusive concepts. C.B.L., 937 S.W.2d at 737. Abandonment is defined as the voluntary and intentional relinquishment of the custody of a child with the intent to never *773 again claim the rights or duties of a parent, or, as the intentional withholding by the parent of his or her care, love, protection and presence, without just cause or excuse. G.S.M. v. T.H.B., 786 S.W.2d 898, 900 (Mo.App.1990). Neglect focuses on physical deprivation or harm, and is defined as "primarily a failure to perform the duty imposed upon the parent by law and by conscience." C.B.L., 937 S.W.2d at 737.
In cases of abandonment and neglect, the relevant issue is intent, "which is generally an inferred fact, determined by conduct within the statutory period, combined with relevant conduct both before and after this period." Id. Proof of intent must be shown by clear, cogent and convincing evidence. In re C.W., 753 S.W.2d 933, 938 (Mo.App. E.D.1988). This standard of proof is met when the evidence "instantly tilt[s] the scales in the affirmative when weighed against the evidence in opposition and the fact finder's mind is left with an abiding conviction that the evidence is true." In re Adoption of W.B.L., 681 S.W.2d 452, 454 (Mo. banc 1984). In determining intent, due regard must be given to the trial court's findings on factual issues as it was in a better position to judge the credibility of the witnesses. Id. at 455.
In the instant case, Father contends that the evidence failed to prove that he willfully abandoned or neglected the children in that he visited them and gave them money and gifts. The record does show that Father brought gifts for the children when he visited, and occasionally gave them pocket money for items such as candy. However, slight acknowledgments such as birthday and Christmas gifts do not prevent neglect from occurring nor do they atone for the lack of support or visitation. In re Adoption of H., 712 S.W.2d 726, 728 (Mo.App. S.D.1986). Here, the record reveals that Father failed to pay child support as ordered and often canceled or failed to show up for visits. Father, who testified that he was confused as to whom to make the payments, admitted that he had made only one of the $25 monthly child support payments to DFS as stipulated in the DFS service agreement and as ordered by the trial court. Father did work periodically at several different jobs and received disability benefits of $682 per month for himself and $95 for each child. However, the record indicates that neither DFS nor Petitioners were aware of any support payments being made by Father during the three-year period.
Father also appears to argue that his partial compliance with the conditions of the DFS service agreements show that he did not have the intent to abandon or neglect the children. While Father did attend several counseling and educational programs, DFS reported that he failed to make a commitment to completing the service plans and to take the necessary steps to rectify the situation. A DFS case plan, dated August 19, 1996, revealed that Father and Mother were inconsistent in attending visitation, and a subsequent DFS case plan, dated October 14, 1997, indicated that Father had made no progress toward mitigating the circumstances which resulted in the children being removed from the home, and that Father had failed to address his drinking problem or seek treatment for his abusive behavior.
When a parent makes no commitment to change the course of the conduct that prevents the return of the children, even full compliance with the terms of a plan made by DFS may be insufficient to prevent termination of parental rights. In the Interest of S.M., 841 S.W.2d 302, 307 (Mo.App. S.D.1992). Here, Father's behavior shows a lack of commitment to take the necessary steps to reunify the family, and his partial compliance with the terms of the service agreements alone do not evidence the requisite intent.
Father also asserts that DFS is biased against him and Mother because they are hearing impaired and that such bias resulted in their failure to regain custody *774 of the children. While not alleging any specific statutory violations, Father asserts that both he and Mother were unable to understand the conditions for regaining custody of the children and, therefore, were unable to meet those conditions as a result of DFS's failure to provide interpreters.
The evidence, however, shows that in providing services to Father and Mother, DFS complied with all relevant disability based statutes including the Rehabilitation Act of 1973, 29 U.S.C. § 794, Americans with Disabilities Act of 1990, 42 U.S.C. § 12132, and the Missouri Human Rights Act, § 213.065(2). The record indicates that DFS provided licensed interpreters at all formal meetings and legal proceedings. A licensed interpreter was also present at some non-legal meetings. DFS reported a cost of over $7,500 for interpreters for Permanency Planning Team ("PPT") meetings and court hearings. The record also reveals that two interpreters were secured pro bono for Father and Mother at counseling sessions of the "Break the Chain" program. However, Father and Mother failed to show up and canceled numerous sessions and the interpreters refused to provide any future services pro bono. At another counseling program where a hired interpreter was present, Father and Mother also failed to show up. The record also shows that Father and Mother used friends and family members as interpreters, and Mother, being proficient in lip reading, served as an interpreter, herself, on several occasions. Furthermore, the service agreements between DFS and Father and Mother were all in writing, making them easily accessible. The evidence indicates that DFS worked to assure that Father and Mother understood the nature of the service agreements and the requirements for reunifying the family. Father's assertion of bias is, therefore, without merit.
Here, the trial court considered all of the evidence and exercising its discretion found that Father and Mother had willfully abandoned and willfully, substantially and continuously neglected K.L.C., C.L.D., M.R.C., and A.L.C. There is substantial evidence in the record to support that finding. Father's point is, therefore, denied.
The judgment of the trial court terminating Father's and Mother's parental rights to K.L.C., C.L.D., M.R.C., and A.L.C., and granting Petitioner's petition for adoption is affirmed.
PREWITT, J. and BARNEY, J., concur.
NOTES
[1] All rule references are to Missouri Rules of Civil Procedure (1999) unless otherwise indicated.
[2] Jurisdiction was transferred to Stone County as a result of Petitioners' change in residence.
[3] All statutory references are to RSMo 1994 unless otherwise indicated.